**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUSAN OBERLANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. ~~————————~~ <u>1:24-cv-00951-JHL</u> |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| NEW CASTLE COUNTY, | ) | |
| MATTHEW MEYER in his | ) | |
| ~~official~~ <u>individual</u> capacity as New Castle | ) | |
| County Executive; DR. JACQUELINE | ) | |
| JENKINS in her <u>individual</u>~~official~~ capacity as ~~————~~ | ) | |
| Human Resources Officer<u>.</u>~~;~~ | ) | |
| ~~MICHAEL R. SMITH in his~~ | ) | |
| ~~official capacity as Chief Financial Officer~~ ~~————~~ | ) | |
| | ) | |
| Defendants. | ) | |

## <u>FIRST AMENDED</u> COMPLAINT

## INTRODUCTION

1.      Plaintiff, Ms. Susan Oberlander ("Plaintiff") files this action against Defendant<u>s</u>, including New Castle County, Office of Assessment ("Defendant NCC" or "NCC"), Matthew Meyer, in his ~~official~~ <u>individual</u> capacity as New Castle County Executive, <u>and</u> Dr. Jacqueline Jenkins ("Jenkins"), in her ~~official~~ <u>individual</u> capacity as Human Resources Officer ~~and Michael R. Smith ("Smith") in his official capacity as Chief Financial Officer~~, (collectively "Defendant<u>s</u>") for compensatory and punitive damages for *inter alia*, violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; violations of the Delaware Discrimination in Employment Act, 19 *Del. C.* § 710, *et seq.*; <u>and</u> violations of 42 U.S.C. § 1983 for rights secured by the Fourteenth Amendment~~, Negligence; and Breach of the Implied Covenant of Good Faith and Fair Dealing~~.

2.     New Castle County continues to remain a safe harbor for dominant male employees in positions of power and authority to sexually harass female employees. Despite prior allegations and investigations by the Delaware Department of Justice, Defendant NCC, under the direction of County Executive Matthew Meyer, continues to permit the willful suppression of complaints of sexual harassment by female employees. As a result, female employees are discouraged from filing complaints due to continued fear of retaliation and retribution. Defendant Meyer and his administration continue to turn a blind eye to blatant acts of sexual harassment which includes male supervisors propositioning female subordinates for sex and naked photos. Defendant Meyer's appointee, Defendant Jenkins, failed to ensure that complaints of sexual harassment were investigated in a timely manner. As a result, Defendant NCC, through the direction of Defendant Meyer, permitted Plaintiff to be subjected to sexual harassment which has caused her humiliation, emotional anguish, derailment of her professional career, and significant loss of economic opportunities.

## NATURE OF THE ACTION

2.3.     Plaintiff has been employed with NCC for approximately 6 years. Plaintiff was initially hired as a Technician on July 2, 2018. Plaintiff was then promoted to Certified Assessor I on November 29, 2018. Thereafter, Plaintiff was promoted to Certified Assessor II on April 19, 2021. At present, Plaintiff remains employed in the position of Certified Assessor II.

3.4.     Defendant NCC engaged in gender discrimination, fostered a hostile work environment, including cultivating an environment of accepted sexual harassment and gender discrimination, and wrongfully retaliated against Plaintiff for her reports of sexual harassment, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended ("Title VII") and the Delaware Discrimination and Employment Act 19 *Del. C.* § 710, *et seq.* ("DDEA").

2

4.5.    Defendant NCC violated 42 U.S.C. § 1983 when it deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution by maintaining a policy, custom and practice of intentional sex discrimination as well as a policy of condoning and promoting a sexually hostile work environment and refusing to adequately investigate claims of sexual harassment.

6.    Defendant NCC further violated 42 U.S.C. § 1983 in maintaining a policy, custom, and practice of condoning and promoting a sexually hostile work environment through its failure to adequately supervise and train its employees and subordinates on adequate investigation and prevention of claims of sexual harassment.

7.    Defendant Meyer acted with deliberate indifference to the known sexual harassment of Plaintiff. Upon information and belief, Defendant Meyer was aware of the harassment to which Plaintiff was subjected and failed to respond adequately.

5.8.    Defendant Jenkins acted with deliberate indifference to the known sexual harassment by John Farnan of Plaintiff and, upon information and belief, other female employees at NCC, by failing to respond adequately.

6.    Defendant was negligent in its supervision and retention of employee John Farnan and further in its training of laws, rules, regulations and policies to prevent sexual harassment and gender discrimination which resulted in Plaintiff's harm.

7.    Defendant breached the implied covenant of good faith and fair dealing, which under Delaware law, inheres in every contract.

## JURISDICTION

9.    This Court has federal question jurisdiction over this cause of action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C § 1331.

10.     This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this District pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

**PARTIES**

12.     Plaintiff, Susan Oberlander, is a female resident of Elkton, Cecil County, Maryland, who at all times relevant to this Complaint was an employee of Defendant NCC.

13.     Defendant NCC is headquartered at New Castle County Government Center, 87 Reads Way, New Castle, Delaware 19720.

14.     Defendant Matthew Meyer ("Defendant Meyer"), the County Executive for New Castle County, acting under color of state law, is being sued in his official individual capacity and is subject to service of process at 87 Reads Way, New Castle, Delaware, 19720.

15.     Defendant Dr. Jacqueline Jenkins ("Jenkins"), the Human Resources Officer, acting under color of state law, is being sued in her official individual capacity and is subject to service of process at 87 Reads Way, New Castle, Delaware, 19720.

16.     Defendant Michael R. Smith ("Smith"), the Chief Financial Officer, is being sued in his official capacity and is subject to service of process at 87 Reads Way, New Castle, Delaware, 19720.

**ADMINISTRATIVE PROCESS**

17.16.  On May 4, 2023, Plaintiff filed a timely Charge of Discrimination (Charge No.: OBE050523/17C-2023-00321) with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, gender discrimination, hostile work environment and retaliation against Defendant.

4

~~18.~~17.  On June 25, 2024, Plaintiff received a "Final Determination and Right to Sue Notice" and a "Reasonable Cause Determination" from the DDOL for Charge No.: OBE050523/17C-2023-00321, attached hereto as *Exhibit A*, which states that the DDOL "found that there is reasonable cause to believe that an unlawful employment practice has occurred."

~~19.~~18.  On July 11, 2024, Plaintiff received a "Determination and Notice of Rights" with a Right to Sue from the EEOC for Charge No.: OBE050523/17C-2023-00321, attached hereto as *Exhibit B*.

19.     On October 23, 2023, Plaintiff filed a timely Charge of Discrimination (Charge No.: OBE102323/17C-2024-00189) with the DDOL and EEOC alleging gender discrimination and retaliation against Defendant relating to Defendant NCC's failure to promote Plaintiff to the Property Assessment Services Administrator (Assessor Supervisor) position.

20.     On August 14, 2024, Plaintiff received a "Final Determination and Right to Sue Notice" from the DDOL for Charge No.: OBE102323/17C-2024-00189, attached hereto as *Exhibit C*.

~~20.~~21.  On August 26, 2024, Plaintiff received a Notice of Right to Sue from the EEOC for Charge No.: OBE102323/17C-2024-00189, attached hereto as *Exhibit D*.

~~21.~~22.  On November 20, 2023, Plaintiff filed a timely Charge of Discrimination (Charge No.: OBE112023/17C-2024-00160) with the DDOL and EEOC alleging gender discrimination and retaliation against Defendant NCC relating to Defendant NCC's failure to promote Plaintiff to the Assessment Analyst position.

~~22.~~23.  On May 17, 2024, Plaintiff received a "Final Determination and Right to Sue Notice" from the DDOL for Charge No.: OBE112023/17C-2024-00160, attached hereto as *Exhibit E*.

5

23.24.  On June 17, 2024, Plaintiff received a "Determination and Notice of Rights" with a Right to Sue from the EEOC for Charge No.: OBE112023/17C-2024-00160, attached hereto as *Exhibit F.*

24.25.  Plaintiff has filed this action within ninety (90) days after receipt of all issued Federal Rights to Sue.

25.26.  Plaintiff has satisfied all statutory prerequisites for filing this action.

<u>**FACTS**</u>

26.27.  Plaintiff began her employment with Defendant NCC on July 2, 2018, in the position of Technician. Thereafter, Plaintiff was promoted to Certified Assessor I on November 29, 2018, and then to Certified Assessor II on April 19, 2021.

27.28.  Plaintiff has an excellent reputation and performance history at NCC. She has received favorable performance evaluations which have continually qualified her for yearly salary raises. In Plaintiff's most recent annual performance evaluations from 2020 through 2024, she received ratings of 'Exceeds Requirements', which is the highest possible overall rating.

28.29.  At present Plaintiff continues to hold the position of Certified Assessor II, and is scheduled to be promoted to Assessment Analyst on August 19, 2024.

29.30.  Upon information and belief, on January 25, 2021, John Farnan was promoted to the position of Property Assessment Services Administrator. At that time, Mr. Farnan became the direct supervisor of ten (10) Certified Assessors, including Plaintiff.

30.31.  In her role as Certified Assessor II and Mr. Farnan's subordinate, Plaintiff reported directly to Mr. Farnan and had daily interactions with him by way of work necessity as well as the close proximity of their desks.

~~31.~~32.  In addition to controlling and monitoring the daily work tasks and activities of Plaintiff and the other Certified Assessors under his direct supervision, Mr. Farnan conducted and signed Plaintiff's annual performance evaluations as her supervisor. Moreover, upon information and belief, it was Plaintiff's understanding that Mr. Farnan had authority to reassign her job responsibilities, discipline her, discharge her employment, or otherwise make decisions causing changes in her benefits as well as the terms and conditions of her employment.

~~32.~~33.  Following Mr. Farnan's promotion, Plaintiff began to feel singled out and targeted based on her sex. This included Mr. Farnan crossing professional boundaries which he did not cross with other male employees.

~~33.~~34.  In the course of their employment relationship, Mr. Farnan and Plaintiff often communicated via text message to quickly communicate regarding work matters.

~~34.~~35.  Mr. Farnan repeatedly contacted Plaintiff outside of working hours about non-related work matters, making Plaintiff uncomfortable and uneasy.

~~35.~~36.  Plaintiff instructed Mr. Farnan to stop texting her regarding non-work-related matters on her personal phone because it made her uncomfortable.

~~36.~~37.  Mr. Farnan intentionally disregarded Plaintiff's request and he continued to text her in inappropriate context which began to become sexual in nature.

~~37.~~38.  Plaintiff confided in her co-worker that she wanted Mr. Farnan to stop texting her and further informed her she wanted the texting to stop.

~~38.~~39.  When Plaintiff was in her most vulnerable state, due to divorcing her husband, Mr. Mr. Farnan took advantage of the situation by ramping up and increasing the aggressive nature of his sexually explicit text messages to Plaintiff.

~~39.~~40.  On July 9, 2022, Mr. Farnan sent sexually explicit and otherwise inappropriate text messages to Plaintiff.

~~40.~~41.  Mr. Farnan's July 9, 2022 text messages to Ms. Oberlander included:

"I'm straight up not right. Straight up mommas boy";
"get your boobs checked";
"It took me like 5 minutes to send that. I'm so out there";
"If I become an asshole let me know";
"Haha. You are cute. Give me time Susan. You'll be like f you";
"Get your breast checked";
"Next thing I knew I was calling a hooker";
"If I get drunk and raunchy please give me a pass";
"I'm a fuckin mess";
"Hey I get a little out of hand sometimes. If I do that to you let me know."";
"I need to take you for a sub or something cause dude I was close to hey, wanna get naked";
"ARE you like look bitch";
"wanna get naked"; and,
"You are hot as fuck."

~~41.~~42.  As a direct result of Mr. Farnan's text messages, Plaintiff experienced severe emotional distress.

~~42.~~43.  Thereafter, on July 11, 2022, Mr. Farnan contacted Plaintiff via email and asked him to respond via text message. In response, Plaintiff emailed Mr. Farnan that she would no longer communicate with him via text message.

~~43.~~44.  On November 8, 2022, beginning at 4:21 A.M., Mr. Farnan sent approximately sixty-four (64) sexually explicit and otherwise inappropriate text messages, some of which solicited sexual relations, to Plaintiff's work phone.

~~44.~~45.  Mr. Farnan's November 8, 2022 text messages to Ms. Oberlander included:

"Give me a dude pass";
"Can I say fuck people";
"Say hay fat ass";
"We're you able to screw with me?";
"Who wants a great screw?";
"Do this. This makes sense you b and bitch";
"Want to screww around";

8

"I'm like, good looking hot girl";

"Would you ever be John you are drunk but if you pay 500 I'd show you my boobs?";

"But if people are not like you are gorgeous no one ever knows so I had to ask and if you are upset? Tough.";

"Wanna gett stupid? That's wrong";

"Wanna fuckka around?";

"I can't say hey lets do this, clit?";

"I'm an dirty guy who just loves naked people";

"Trust me you do not want to see me naked";

"I'm 50 and bald and good foor.ypu";

"Call me. Let's have fuck it fun!"; and,

"You probably think I'm a drunk asshole and I would go with that but you are cute so go with that."

45.46.  Thereafter, on November 9, 2022, Plaintiff reported Mr. Farnan's sexual harassment to his supervisor, Denzil Hardman, New Castle County Accounting and Fiscal Manager.

46.47.  Mr. Hardman informed Plaintiff that the matter would be looked into and instructed her to work from home until further notice.

47.48.  Plaintiff was forced to work from home while Mr. Farnan continued to work in the office interacting with other female employees unrestricted.

48.49.  Mr. Hardman instructed Plaintiff to inform him of when she would like to come into the office to work thereafter to "coordinate" when she could come into the office in order to keep her separate from Mr. Farnan.

49.50.  Upon information and belief, Defendants still allowed Mr. Farnan to come into the office at his convenience following Plaintiff's report of sexual harassment.

50.51.  Later in the day on November 9, 2022, Will Jones from Defendant Human Resources reached out to Plaintiff instructing her to fill out and return a formal complaint form and to report to Mr. Hardman rather than Mr. Farnan. Mr. Jones further confirmed that Plaintiff would not have further contact with Mr. Farnan.

51.52.  Defendant Jenkins acted with deliberate indifference to the rights of Plaintiff to be free from sexual harassment in the workplace. Defendants Meyer and Jenkins failed to take immediate action to protect Plaintiff and therefore, took no action to instruct Mr. Farnan not to contact Plaintiff.  As a result, Mr. Farnan reached out to Plaintiff via text again on November 17, 2022.

52.53.  Plaintiff thereafter informed Mr. Hardman and Mr. Jones of Mr. Farnan's contact. Upon information and belief, at that time, over a week after Plaintiff's initial complaint, Defendant NCC informed Mr. Farnan a complaint was made against him and instructed him to cease contact with Plaintiff.

54.   Thereafter, on November 30, 2022, Defendant Jenkins acquiesced to the unreasonable handling of Plaintiff's complaint by failing to properly instruct Celia Pagan from Defendant's Human Resources how to properly and adequately investigate a complaint of sexual harassment. As a result, Plaintiff was required to complete the same formal complaint form she had previously completed and submitted two weeks prior, forcing Plaintiff unnecessarily to relive the events and details of her supervisor's communications.  contacted Plaintiff instructing her to fill out a formal complaint despite Plaintiff filling out and returning the same formal complaint form approximately two weeks prior.

55.   Defendant Meyer acted with deliberate indifference to the known sexual harassment of Plaintiff thereby deliberately depriving Plaintiff of her constitutional right to work in an environment free of sexual harassment by failing to implement any policies, customs or procedures to adequately and reasonably respond to complaints of sexual harassment.

10

56.    Defendant Meyer acted with deliberate indifference to the constitutional rights of Plaintiff and other female employees at NCC by failing to implement a zero-tolerance policy to sexual harassment.

57.    Upon information and belief, Defendant Meyer and Defendant Jenkins were aware of John Farnan's sexual harassment of Plaintiff, yet failed to suspend Farnan with pay during the pendency of the investigation.

58.    Upon information and belief, Defendant Meyer and Defendant Jenkins were aware of the irrefutable sexually explicit text messages to Plaintiff and upon information and belief they were aware of other incidents of sexual harassment by John Farnan, however, Mr. Farnan was allowed to continue to work in the office for several months as a supervisor during the pendency of the investigation.

53.59.    The deliberate actions and inactions of Defendant Meyer and Defendant Jenkins amount to a deliberate deprivation of Plaintiff's constitutional right to work in an environment free of sexual harassment.

54.60.    On December 8, 2022, approximately one month after her complaint of sexual harassment, Ms. Pagan met with Plaintiff to review her complaint.

55.61.    During this meeting, Plaintiff was informed by Ms. Pagan that the delay in the investigation process into Plaintiff's complaint was because there were several other similar incidents which took precedence over Plaintiff's.

56.62.    Thereafter, Defendants continued to mishandle and unreasonably delay its investigation into Plaintiff's complaint. Plaintiff received no information pertaining to the status of her complaint or the investigation from the time of her interview on December 8, 2022 until she reached out to Human Resources on January 24, 2023. Further, Plaintiff provided two witnesses

in support of her complaint, neither of which were contacted by Defendant NCC in its investigation until February 14, 2023, over three months after Plaintiff's complaint.

57.63. On March 23, 2023, over four months after Plaintiff's complaint of sexual harassment, Defendant's Human Resources concluded its investigation and found that Plaintiff's allegations of sexual harassment were substantiated.

58.64. In its findings, Defendant's Human Resources determined Mr. Farnan's behavior toward Plaintiff was unwelcomed, unprofessional, inappropriate, and interfered with her work performance.

59.65. Defendant's Human Resources assured Plaintiff that appropriate action would be taken against Mr. Farnan.

66. Defendant did not take appropriate action following the substantiation of Plaintiff's allegations of sexual harassmentassault.

67. Upon information and belief, Defendant Jenkins, with the approval and direction of Defendant Meyer, continued to permit Mr. Farnan continued to remain be employed by NCC Government, even after his acts of sexual harassment were substantiated.

68. Upon information and belief, Defendant Jenkins, with the approval and direction of Defendant Meyer, decided to permit Mr. Farnan to remain a County employee in a demoted role to a position equal with Plaintiff. Eventually, Mr. Farnan was demoted to an equal position with Plaintiff, thereby making her harasser Plaintiff's co-worker.

69. Upon information and belief, Defendant Jenkins, with the approval and direction of Defendant Meyer, demoted Mr. Farnan's working location remains to a role in which he would work in close proximity to Plaintiff's desk.

12

60.70.  Defendant Meyer and Defendant Jenkins acted with deliberate indifference when they knew of the sexual harassment Plaintiff was exposed to by Mr. Farnan, and yet failed to reasonably respond and instead placed Plaintiff in and Plaintiff is still subject to continued contact with Mr. Farnan by way of department meetings, internal communications, work events, and other such means.

71.    Upon information and belief, even after Plaintiff's allegations of sexual harassment were substantiated, Defendant continued to allow Mr. Farnan to come into the office at his own convenience. Meanwhile, Plaintiff was still instructed to notify Mr. Hardman when she would like to come into the office and wait for permission to come in when Mr. Farnan was not in the office until June 20, 2023.

61.72.  Upon information and belief, Plaintiff repeatedly spoke with Mr. Hardman regarding the notification process of her coming into the office and details pertaining to avoiding potential contact with Mr. Farnan. During these conversations, Mr. Hardman asked Plaintiff how she would feel about continuing to work with Mr. Farnan.

73.    Additionally, on May 15, 2023 through May 17, 2023, after Plaintiff's allegations of sexual harassment were substantiated, Defendant allowed Mr. Farnan to attend an overnight work conference in Ocean City, Maryland with other female employees.

74.    Further, in December of 2023, Plaintiff notified Defendant NCC that she was scheduled to attend a required work conference for a USPAP course in Dover, Delaware and that she anticipated contact with Mr. Farnan at the conference. As Plaintiff was previously informed that she would no longer be required to have contact with Mr. Farnan after her allegations of sexual harassment were substantiated, she requested that Defendant NCC not allow Mr. Farnan to attend the USPAP course the same year that she was scheduled to attend.

13

62.75.  Upon information and belief, the USPAP course was a bi-annual requirement for the Assessors USPAP certifications, as such Plaintiff proposed she attend the conference for her certification as scheduled in December of 2023, while Mr. Farnan attend the conference for his certification at the next opportunity in 2024. Defendant NCC denied Plaintiff's request to avoid anticipated contact with Mr. Farnan and did not prevent him from attending the conference. As a direct result, Plaintiff was not able to attend the USPAP conference.

63.76.  Contrary to NCC polices and Federal and State laws, Plaintiff was retaliated against for making her reports of sexual harassment against her supervisor.

64.77.  Since making her report of sexual harassment Plaintiff applied for two promotional positions. However, on both occasions, Plaintiff was not selected even though she was qualified. The positions were both offered to employees who did not engage in protected activity.

65.78.  In or around June 30, 2023, Defendant NCC posted a promotional opening for the Property Assessment Services Administrator (Assessor Supervisor) position.

66.79.  The open Property Assessment Services Administrator position was previously held by Plaintiff's former supervisor, John Farnan.

67.80.  Plaintiff applied for the Property Assessment Services Administrator position on July 10, 2023.

68.81.  On or around September 8, 2023, Plaintiff interviewed for the Property Assessment Services Administrator position. This interview was conducted by Denzil Hardman, Laura McDermott, Rafat Kille, and an unknown individual from NCC's Finance Department.

69.82.  Thereafter, on or around September 18, 2023, Erin Drysdale, a female employee who upon information and belief had not engaged in protected activity, was promoted to the Property Assessment Services Administrator position over Plaintiff.

14

70.83.  Plaintiff was more qualified for the Assessment Services Administrator position than Erin Drysdale.

71.84.  Upon information and belief, Erin Drysdale was not certified as a Certified Assessor II when she was hired for the Assessment Services Administrator position, which was one of the qualification requirements for the position. Defendant NCC allowed Drysdale to curtain this qualification by obtaining her certification after she was promoted to the Assessment Services Administrator position. In contrast, Plaintiff met this qualification as she already had her certification as a Certified Assessor II.

72.85.  Moreover, Plaintiff was more qualified for the Assessment Services Administrator position because Plaintiff had more management experience than Erin Drysdale. Upon information and belief, Erin Drysdale did not have any prior management experience while Plaintiff had approximately five (5) years of management experience prior to beginning her employment with NCC.

73.86.  As a result of the continued discrimination and retaliation, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission on October 23, 2023 (Charge No. OBE102323/17C-2024-00189).

74.87.  In or around September 21, 2023, Defendant NCC posted a promotional opening for an Assessment Analyst position.

75.88.  The open Assessment Analyst position was previously held by Erin Drysdale prior to her promotion to Property Assessment Services Administrator.

76.89.  Plaintiff applied for the Assessment Analyst position on October 2, 2023.

77. 90.  On or around October 25, 2023, Plaintiff interviewed for the Assessment Analyst position. This interview was conducted by Denzil Hardman, Rafat Kille, Erin Drysdale, and an unknown individual from NCC's Human Resources.

78. 91.  Thereafter, on or around November 9, 2023, Jason Warren, a male employee who upon information and belief had not engaged in protected activity, was promoted to the Assessment Analyst position over Plaintiff.

79. 92.  Plaintiff was more qualified for the Assessment Analyst position than Jason Warren.

80. 93.  Upon information and belief, Plaintiff had more experience than Jason Warren as she had been working at the Office of Assessment for longer than him. Moreover, during their tenure, Plaintiff had higher productivity than Jason Warren and consistently received high performance ratings. Additionally, Plaintiff had increased job responsibilities in comparison to Jason Warren, including training more Assessors.

81. 94.  Furthermore, Plaintiff ranked higher than Jason Warren and was selected for promotion over him in two prior promotional cycles.

82. 95.  Plaintiff was denied a promotion by Defendant NCC in retaliation for her reports of discrimination.

83. 96.  Denzil Hardman, an interview panel member and a decision maker in Defendant's promotional processes, was aware of Plaintiff's prior complaints of sexual harassment, discrimination, and retaliation.

84. 97.  Despite Plaintiff's qualifications and performance history, Defendant NCC discriminatorily and retaliatorily failed to promote Plaintiff in its subsequent promotional cycle

16

following her protected activity of filing Charges of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission.

85. 98.  As a result of the continued discrimination and retaliation, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission on November 20, 2023 (Charge No. OBE112023 / 17C-2024-00160).

99.    On June 25, 2024, after the DDOL's investigation into Plaintiff's Charge (Charge No. OBE050523/17C-2023-00321) alleging sexual harassment, gender discrimination, hostile work environment and retaliation against Defendant, the DDOL issued a "Reasonable Cause Determination" citing that in its investigation the DDOL had "found that there is reasonable cause to believe that an unlawful employment practice has occurred."

86. 100.    Defendants NCC, Meyer, and Jenkins, through their actions and inactions, have violated Plaintiff's right to equal protection under the Fourteenth Amendment.

87. 101.    As a result of Defendant's continued discrimination and retaliation Plaintiff has experienced and suffered from low self-esteem, lack of self-confidence, humiliation, feelings of betrayal, powerlessness and mistrust.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT I
**Violations of the Title VII of the Civil Rights Act (42 U.S.C. § 2000(e), *et seq*.) and the Delaware Discrimination in Employment Act (19 *Del. C.* § 710, *et seq*.) – Discrimination Based on Sex– Sexual Harassment and Hostile Work Environment**
**Against Defendant NCC**

88. 102.    The allegations of Paragraphs 1 through 101 87 are incorporated by reference as if fully restated herein.

89.103.    Defendant NCC employs fifteen or more employees within the State of Delaware and is an "Employer" as defined by Title VII (42 U.S.C. § 2000(e)(b)) and the DDEA (19 *Del. C.* § 710(7)).

90.104.    At all times relevant hereto, Plaintiff was employed by Defendant NCC and is an "Employee" as defined by Title VII (42 U.S.C. § 2000(e)(f)) and the DDEA (19 *Del. C.* § 710(6)).

105.    For Charge No. OBE050523/17C-2023-00321, Plaintiff received a Right to Sue letter from the DDOL on June 25, 2024 (Exhibit A) and a Right to Sue letter from the EEOC on July 11, 2024 (Exhibit B).

91.106. For Charge No. OBE102323/17C-2024-00189, Plaintiff received a Right to Sue letter from the DDOL on August 14, 2024 (Exhibit C) and a Right to Sue letter from the EEOC on August 26, 2024 (Exhibit D).

92.107.    For Charge No. OBE112023/17C-2024-00160, Plaintiff received a Right to Sue letter from the DDOL on May 17, 2024 (Exhibit EC) and a Right to Sue letter from the EEOC on June 17, 2024 (Exhibit FD).

93.108.    Plaintiff has satisfied all statutory prerequisites for filing this action.

94.109.    Defendant NCC discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex by way of subjecting her to sexual harassment and a hostile work environment.

95.110.    Plaintiff was subjected to sexual harassment and a hostile work environment perpetuated by Defendant, which has continued through her employment at NCC.

18

96.111.      As stated above, Plaintiff was repeatedly subjected to unwelcome sexual advances, requests of sexual nature, and sexually explicit text messages sufficient to constitute sexual harassment from John Farnan which impacted her ability to work in a job she enjoyed.

97.112.      The comments and actions by Defendant NCC, by and through its employee, John Farnan, were based upon Plaintiff's sex. The sexually explicit and graphic text messages had numerous effects on Plaintiff's work including; making Plaintiff's working conditions intolerable, creating tension in her professional relationships with her supervisor and co-workers, causing her severe stress and anxiety, inducing Plaintiff to forgo networking opportunities and other opportunities for advancement, and causing strain in her personal life. Further, this created and subjected Plaintiff to a hostile work environment on the basis of her gender.

98.113.      Plaintiff was effectively forced to abstain from several opportunities to participate in trainings and conferences in order to avoid continued contact with her male harasser, which has impacted her ability to advance her career.

99.114.      This discrimination detrimentally affected Plaintiff. Moreover, the sexual harassment and hostile work environment endured by Plaintiff would detrimentally affect a reasonable person of the same sex in the same position.

100.115.      At the time of such conduct, John Farnan was Plaintiff's direct supervisor. At all times relevant to this Complaint, it was Plaintiff's understanding that John Farnan was empowered by NCC to take action to change her employment status and that he directed Plaintiff's daily work activities. Furthermore, John Farnan is listed as Plaintiff's supervisor in her annual performance evaluations spanning from 2021 through 2023.

101.116.    The comments and actions by Defendant, by and through its employee, John Farnan, were severe and/or pervasive, thus altering the terms and conditions of Plaintiff's employment and creating an abusive work environment.

102.117.    The sexually explicit and graphic text messages permeated Plaintiff's work environment as they occurred regularly and by her direct supervisor, thereby making Plaintiff's working conditions intolerable.

103.118.    The discrimination and sexual harassment Plaintiff endured had the purpose and effect of unreasonably interfering with Plaintiff's work performance and creating an intimidating, hostile and offensive working environment.

104.119.    Defendant NCC discriminated against Plaintiff by imposing a hostile work environment upon Plaintiff by condoning the sexually harassing conduct of John Farnan.

105.120.    Upon information and belief, Defendant Human Resources had previously received complaints of a similar nature about John Farnan, placing Defendant NCC on notice of his sexual propensity and discrimination.

106.121.    Defendant NCC knew, or should have known, about the sexual harassment and the propensity for continuation of such conduct and failed to take proper corrective action.

107.122.    Defendant NCC failed to promptly investigate Plaintiff's complaint of sexual harassment. Plaintiff made Defendant aware of the sexual harassment she endured on November 9, 2022, however despite her various attempts to cooperate with Human Resources and progress its investigation, an investigation decision was not issued by Defendant until March 23, 2023, over four months after Plaintiff's complaint.

108.123.    Moreover, Defendant NCC failed to take proper corrective action against John Farnan, which impacted and continues to impact Plaintiff's ability to work in a job she

enjoyed. Defendant's investigation found that Farnan's behavior was unwelcomed, unprofessional, inappropriate, and interfered with Plaintiff's work performance and advised that action would be taken, however Defendant NCC merely demoted Farnan to an equal position to Plaintiff within the same department.

109.124.    NCC did not take prompt or appropriate action to prevent the discriminatory and harassing behavior.

110.125.    Defendant NCC acquiesced in the discriminatory and harassing conduct by creating and allowing to exist a hostile, intolerable, offensive and abusive workplace that a reasonable person would consider intimidating, hostile, or abusive.

111.126.    Defendant's actions stated above are sufficient to support a continuing violation of sexual harassment and a hostile work environment claim as they are a series of separate acts that collectively constitute one unlawful employment practice. The discrimination Plaintiff endured was not isolated or sporadic incidents and therefore are part of the same unlawful employment practice.

112.127.    Defendant NCC has intentionally violated Plaintiff's rights under Title VII and the DDEA, with malice or reckless indifference, and as a result is liable for punitive damages.

113.128.    As a direct and proximate result of the discriminatory and wrongful conduct of Defendant NCC, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

**<u>COUNT II</u>**
**Violations of the Title VII of the Civil Rights Act (42 U.S.C. § 2000(e), *et seq*.) and the Delaware Discrimination in Employment Act (19 *Del. C.* § 710, *et seq*.) – Retaliation Against Defendant NCC**

114.129.    The allegations of Paragraphs 1 through 128113 are incorporated by reference as if fully restated herein.

115.130.    Defendant NCC employs fifteen or more employees within the State of Delaware and is an "Employer" as defined by Title VII (42 U.S.C. § 2000(e)(b)) and the DDEA (19 *Del. C.* § 710(7)).

116.131.    At all times relevant hereto, Plaintiff was employed by Defendant NCC and is an "Employee" as defined by Title VII (42 U.S.C. § 2000(e)(f)) and the DDEA (19 *Del. C.* § 710(6)).

132.    For Charge No. OBE050523/17C-2023-00321, Plaintiff received a Right to Sue letter from the DDOL on June 25, 2024 (Exhibit A) and a Right to Sue letter from the EEOC on July 11, 2024 (Exhibit B).

117.133.    For Charge No. OBE102323/17C-2024-00189, Plaintiff received a Right to Sue letter from the DDOL on August 14, 2024 (Exhibit C) and a Right to Sue letter from the EEOC on August 26, 2024 (Exhibit D).

> **Formatted:** Font: (Default) Times New Roman, 12 pt

118.134.    For Charge No. OBE112023/17C-2024-00160, Plaintiff received a Right to Sue letter from the DDOL on May 17, 2024 (Exhibit EC) and a Right to Sue letter from the EEOC on June 17, 2024 (Exhibit FD).

119.135.    Plaintiff has satisfied all statutory prerequisites for filing this action.

120.136.    Plaintiff engaged in protected activity on November 9, 2022 when she reported to Denzil Hardman and Defendant Human Resources that she had endured sexual harassment, discrimination, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Delaware Discrimination in Employment Act in the manners described above.

121.137.   Moreover, Plaintiff engaged in protected activity when she filed a Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission on May 4, 2023 (Charge No. OBE050523/17C-2023-00321).

138.   Such complaints are a protected activity under Title VII of the Civil Rights Act of 1964 and the Delaware Discrimination in Employment Act.

122.139.   Upon information and belief, Defendant NCC became aware of Plaintiff's protected activity of filing a Charge of Discrimination (Charge No. OBE050523/17C-2023-00321) in or around September of 2023.

> **Formatted:** Space After: 0 pt

> **Formatted:** Font: (Default) Times New Roman, 12 pt

123.140.   On or around, July 10, 2023, following Plaintiff's protected activity, she applied for the open Property Assessment Services Administrator position.

124.141.   Thereafter, on or around September 8, 2023, Plaintiff interviewed for the Property Assessment Services Administrator position. This interview was conducted by a panel including Denzil Hardman, who was aware of Plaintiff's protected activity.

125.142.   Denzil Hardman scored the candidates' interviews, including Plaintiff's, and had decision-making power in the hiring process for the Property Assessment Services Administrator position.

126.143.   Thereafter, on or around September 18, 2023, Erin Drysdale, a female employee who upon information and belief had not engaged in protected activity, was promoted to the Property Assessment Services Administrator position over Plaintiff.

127.144.   Plaintiff engaged in further protected activity when she filed a Charge of Discrimination (Charge No.: OBE102323/17C-2024-00189) with the DDOL and EEOC on October 23, 2023, alleging gender discrimination and retaliation against Defendant NCC relating

to Defendant's failure to promote Plaintiff to the Property Assessment Services Administrator position.

128.145.    On or around October 2, 2023, Plaintiff applied for the open Assessment Analyst position.

129.146.    Thereafter, on or around October 25, 2023, following Plaintiff's protected activity, she interviewed for the Assessment Analyst position. This interview was conducted by a panel including Denzil Hardman, who was aware of Plaintiff's protected activity.

130.147.    Denzil Hardman scored the candidates' interviews, including Plaintiff's, and had decision-making power in the hiring process for the Property Assessment Analyst Services Administrator position.

131.148.    Thereafter, on or around November 9, 2023, Jason Warren, a male employee who upon information and belief had not engaged in protected activity, was promoted to the Assessment Analyst position over Plaintiff.

132.149.    Plaintiff was more qualified than the other candidates that Defendant NCC selected for promotion.

133.150.    By way of explanation, Plaintiff was more qualified than Erin Drysdale because she held certification as a Certified Assessor II when Erin Drysdale did not. This certification was a qualification requirement for the Assessment Services Administrator position. Moreover, Plaintiff was more qualified for the Assessment Services Administrator position because she had more management experience than Erin Drysdale.

134.151.    Furthermore, Plaintiff was more qualified than Jason Warren for the Assessment Analyst position because she had more experience and higher productivity than him.

Additionally, Plaintiff was previously promoted over Jason Warren in two prior promotional cycles for Certified Assessor I and Certified Assessor II positions.

152.    Despite her qualifications, Defendant NCC denied Plaintiff promotion for the Property Assessment Services Administrator and Assessment Analyst promotional positions in retaliation for her reports of sexual harassment and discrimination.

135.153.    Defendant NCC retaliated against Plaintiff at the first available opportunity after she engaged in protected activity by denying her promotion to Property Assessment Services Administrator and Assessment Analyst.

136.154.    Thereafter, Plaintiff again engaged in protected activity when she filed a Charge of Discrimination (Charge No.: OBE112023/17C-2024-00160) with the DDOL and EEOC on November 20, 2023, alleging gender discrimination and retaliation in Defendant's promotional process.

137.155.    Defendant NCC has continuously retaliated against Plaintiff for her engagement in protected activity by repeatedly failing to promote her.

138.156.    Since Plaintiff's report of sexual harassment on November 9, 2022, and her first Charge of Discrimination with the DDOL/EEOC on May 4, 2023, Defendant NCC has failed to promote Plaintiff on two occasions. On both occasions, Plaintiff was denied promotion in favor of individuals who did not engage in protected activity and were less qualified than Plaintiff.

139.157.    Defendant NCC has intentionally violated Plaintiff's rights under Title VII and the DDEA, with malice or reckless indifference and as a result is liable for punitive damages.

140.158.    As a direct result of the discriminatory and wrongful conduct of Defendant NCC, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

**COUNT III**
**Violation of 42 U.S.C. § 1983 –**
**Sexual Harassment and Hostile Work Environment**
**Against All Defendants**

141.159.       The allegations of Paragraphs 1 through 15840 are incorporated by reference as if fully restated herein.

142.160.       Defendant's discriminatory conduct, as set forth herein, deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

143.161.       Municipal bodies are liable for constitutional violations under 42 U.S.C § 1983 when execution of its official policy or custom deprives an individual of her rights protected under the Constitution.

144.162.       The incidents of sexual harassment as described in the above paragraphs had the effect of substantially interfering with Plaintiff's work performance by creating a hostile, intimidating, and offensive working environment amounting to unlawful sex discrimination in violation of Plaintiff's right under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

145.163.       Defendants NCC, Meyer, and Jenkins violated the rights secured to Plaintiff by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from sex discrimination in public employment in that, having actual or constructive knowledge of the sexual harassment committed by John Farnan, it acted with deliberate indifference to Plaintiff's rights in failing to promptly intervene to stop the unlawful conduct, in failing to properly supervise or control John Farnan, and in failing to promptly remedy John Farnan's conduct after they learned of such conduct.

26

164.    Defendant NCC maintained a policy, custom and practice of intentional sex discrimination as well as a policy of condoning and promoting a sexually hostile work environment and refusal to adequately investigate claims of sexual harassment. Defendant NCC's policy, custom and practice have deprived Plaintiff of her rights protected by Title VII and the Fourteenth Amendment.

165.    Defendants Meyer's and Jenkins' discriminatory actions are representative of an official policy or custom of Defendant NCC and/or taken by an official with final policy making authority.

166.    Defendants Meyer and Jenkins, in their individual capacities, acted with deliberate indifference to Plaintiff's rights by failing to promptly investigate credible allegations of sexual harassment reported to Defendant NCC on November 9, 2022, and failing to properly remedy Mr. Farnan's conduct after they learned of such conduct and such conduct was substantiated.

167.    By virtue of her sex, Plaintiff is a member of a protected class and she received different, less favorable treatment than her male co-workers and other co-workers who did not engage in protected activity.

168.    Defendant Meyer acted under color of state law with final policymaking authority, created a policy or practice of allowing sexual harassment to permeate the workplace in public employment. Defendant Meyer had actual or constructive knowledge that his failure to take affirmative action to control the obvious misconduct by Mr. Farnan would deprive Plaintiff of her constitutional right to be free from sex discrimination in public employment.

169.    Defendant Meyer was at all times relevant a policymaker as County Executive.

170.    Defendant Meyer, as a policymaker for NCC, failed to act affirmatively at all, even though the need to take action to control the agents of NCC government was obvious and the

27

inadequacy of such inaction would result in policies or practices which would likely result in violation of constitutional rights of NCC employees.

171.    Defendant NCC, through the actions of its policymaker, Defendant Meyer, failed to implement an adequate policy to protect employees from sexual harassment by failing to implement specific standards and rules related to an investigation of sexual harassment and further by failing to implement a zero-tolerance policy for acts of substantiated sexual harassment.

172.    The inadequacy of any existing policies and Defendant NCC's failure to implement such policies fails to deter, but rather acquiesces to the pattern and practices of sexual discrimination in violation of Plaintiff's constitutional rights.

146.173.    Defendant NCC has engaged in a pattern of discrimination in their policies by failing to adequately investigate and discipline acts of sexual harassment.

147.174.    John Farnan's discriminatory actions are representative of an official policy or custom of Defendant which condones sexual harassment and perpetuates a hostile work environment.

148.175.    John Farnan , individually and in his official capacity, acted with deliberate indifference to Plaintiff's constitutional rights in that he intentionally and continuously sexually harassed Plaintiff during her employment with Defendant NCC. John Farnan knew he could get away with his discriminatory behavior as Defendant condoned his behavior.

149.176.    Denzil Hardman knew of John Farnan's discriminatory conduct as it was reported to him. Denzil Hardman , individually and in his official capacity, acted with deliberate indifference and failed to promptly and adequately address John Farnan's discriminatory conduct, thereby acquiescing to his conduct. This allowed Plaintiff to be continually subjected to sexual harassment and a hostile work environment.

28

150.177.    Defendants NCC, Meyer, and Jenkins acted with deliberate indifference in its investigation into Plaintiff's claims by delaying interviewing Plaintiff and witnesses and otherwise failing to promptly investigate Plaintiff's claims in order to prolong the investigation to protect John Farnan.

151.178.    Defendant's' violation of the United States Constitution included policies, practices, and/or customs to treat female employees less favorably than male employees and to promote a policy of sex discrimination, which was committed, directed, implemented and/or ratified by officials of Defendants in supervisory capacities with policymaking and decision-making authority.

152.179.    The unconstitutional behavior of the Defendants was carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of Plaintiff.

153.180.    As a direct and proximate result of Defendant's' conduct which caused Plaintiff to be denied equal protection under the law, Plaintiff suffered injuries, damages, and losses alleged herein and has incurred attorney's fees.

154.181.    As a direct result of the discriminatory and wrongful conduct of Defendants, Plaintiff suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

**COUNT IV**
**Violation of 42 U.S.C. § 1983 –**
**Failure to Train/Supervise**
**Against All Defendants**

155.182.    The allegations of Paragraphs 1 through 18154 are incorporated by reference as if fully restated herein.

156.183.    Municipal bodies are liable for constitutional violations under 42 U.S.C §
1983 when execution of its official policy or custom deprives an individual of her rights protected
under the Constitution.

157.184.    Defendants NCC, Meyer, and Jenkins maintained a policy, custom, and
practice of condoning and promoting a sexually hostile work environment through its their failure
to adequately supervise and train its employees and subordinates on adequate investigation and
prevention of claims of sexual harassment.

158.185.    Defendant NCC acted with deliberate indifference to Plaintiff's
constitutional rights when it had actual knowledge of the sexually discriminatory environment
perpetuated by John Farnan and failed to establish appropriate policies and procedures and
appropriately train and supervise its employees, namely Denzil Hardman, Celia Pagan, Maya
Matthews, and John Farnan, on the investigation and prevention of sexual harassment in the
workplace.

159.186.    Upon notice of the sexual harassment of Plaintiff, Defendant NCC had a
duty to properly investigate Plaintiff's report of sexual harassment and prevent any further sexual
harassment. Instead, due to Defendant NCC's failure to train and supervise Denzil Hardman, Celia
Pagan, Maya Matthews, and John Farnan, Defendants it failed to take appropriate remedial action
and thereby consciously acquiesced to John Farnan's conduct.

160.187.    Defendants Meyer and Jenkins, in their individual capacities, acted with
deliberate indifference to Plaintiff's constitutional rights when theyit failed to appropriately train
NCC supervisory staff and their subordinates on the investigation and prevention of sexual
harassment in the workplace. Upon notice of the sexual harassment of Plaintiff, Defendant NCC
had a duty to investigate Plaintiff's report of sexual harassment and supervise its employees to

30

ensure a proper investigation was carried out into Plaintiff's reports of sexual harassment. Instead, Defendants Meyer and Jenkins failed to take any action and thereby acquiesced to Mr. Farnan's conduct.

161.188.    Defendants Meyer and Jenkins failed to adequately supervise and/or train others to adequately supervise and/or train John Farnan, allowing him to sexually harass Plaintiff on several occasions.

162.189.    Defendants intentionally failed to take measures reasonably calculated to end or mitigate that harassment of female employees, including Plaintiff. Defendants's failure to enforce effective discipline against a harasser, protect female employees, and eliminate or curtail sexual harassment against them has been so widespread and well-settled as to constitute the de facto equivalent of a formal policy of sex discrimination.

163.190.    Multiple NCC policy makers, including Denzil Hardman, as well as other high-ranking members of the New Castle County municipality Defendant Meyer and Jenkins, implemented a custom and policy of complacency by looking the other way and failing to take any corrective action to prevent sexual harassment of its female employees, including Plaintiff.

164.191.    Upon information and belief, Defendants had constructive and/or actual notice that John Farnan engaged in sexual harassment perpetrated against several female NCC employees, including Plaintiff, and took no action to stop this conduct.

165.192.    Defendants wereas complicit in John Farnan's actions and thereby created a custom and policy of acceptance of sexual harassment against female employees.

166.193.    Defendants haves created a policy and custom to dissuade victims of sexual harassment from coming forward by failing to take appropriate corrective action against harassers, including John Farnan.

31

167.194.     Through theirits polices, practices, and customs, whether formal or informal, Defendants deprived Plaintiff of her right to due process as protected by the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C. §1983.

168.195.     As a direct and proximate result of Defendants's wanton, willful, and/or reckless acts and conduct which caused Plaintiff to be denied equal protection under the law, Plaintiff suffered injuries, damages, and losses alleged herein and has incurred attorney's fees.

169.196.     As a direct result of the discriminatory and wrongful conduct of Defendants, Plaintiff suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

COUNT V
Negligent Supervision, Training, and Retention

170.    The allegations of Paragraphs 1 through 169 are incorporated by reference as if fully restated herein.

171.    Defendant failed to exercise ordinary care to prevent an intentional harm suffered by Plaintiff committed by its employee, John Farnan.

172.    John Farnan's acts of sexual harassment against Plaintiff were done in acting outside the scope of his employment.

173.    John Farnan's harassment of Plaintiff was committed via a cellular device issued by Defendant NCC.

174.    Defendant knew and had reason to know of the necessity and ability to control John Farnan. At all times relevant hereto, John Farnan was an employee of Defendant NCC and was subject to its control and supervision.

175.    Plaintiff knew of its need to control John Farnan by way of Plaintiff's reports of his misconduct made to Denzil Hardman and Defendant NCC Human Resources.

32

176.    Upon information and belief, Defendant also had reason to know of the necessity to control John Farnan by way of previous disciplinary concerns and complaints against him.

177.    Moreover, Defendant had a duty to train its employees on its sexual harassment and misconduct policies, which prohibit sexual harassment as well as retaliation against individuals involved in reporting or investigating alleged sexual misconduct violations. These policies further outline requirements for reporting and investigating misconduct.

178.    Defendant owed Plaintiff a duty to as an employee of NCC to enjoy a workplace free from sexual harassment.

179.    Defendant breached this duty to supervise its employees when it allowed John Farnan to sexually harass Plaintiff.

180.    Moreover, Defendant had a duty to provide its employees with adequate annual sexual harassment and misconduct training.

181.    Defendant failed to adequately train its employees, including John Farnan, regarding such sexual harassment and misconduct policies.

182.    Due to Defendant's failure to supervise its employee, John Farnan, and its failure to properly train its employees on its own sexual harassment and misconduct policies Plaintiff was harmed.

183.    Defendant intentionally, willfully, wantonly, recklessly and with gross negligence breach its duty to Plaintiff by retaining and failing to supervise John Farnan, failing to properly and adequately train its employees on its own sexual harassment and misconduct policies, and failed to protect Plaintiff from the foreseeable harassment of John Farnan when they knew or should have known that he posed a danger to Plaintiff and other NCC employees.

33

184.    As a direct result of the wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

**COUNT VI**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

185.    The allegations of Paragraphs 1 through 184 are incorporated by reference as if fully restated herein.

186.    Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant NCC.

187.    Delaware has a clear and firmly rooted public policy to deter, prevent and punish sexual harassment in the workplace.

188.    Defendant breached the covenant of good faith and fair dealing by condoning and perpetuating discriminatory conduct and sexual harassment.

189.    Defendant's failure to adequately address, investigate, or prevent the sexual harassment endured by Plaintiff is in violation of Delaware public policy.

190.    Furthermore, Defendant is subject to specific obligations to prevent further sexual harassment stemming from incidents of sexual harassment or misconduct spanning from 1996 to 2016.

191.    Defendant's failure to comply with public policy constitutes breach of the implied covenant of good faith and fair dealing.

192.    Defendant's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff financially and professionally.

193.    As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to her professional career and economic loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A.  Declare the conduct by Defendants to be in violation of Plaintiff's statutory rights and common law rights.

B.  Award Plaintiff any and all consequential damages, including but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages and any or all pecuniary damages.

C.  Award Plaintiff all compensation due as a result of Defendant's' violations herein.

D.  Award Plaintiff emotional distress damages.

E.  Award Plaintiff all attorney's fees, costs and expenses available under the law.

F.  Award Plaintiff punitive damages to deter the Defendants and others from engaging in conduct similar to that which formed the basis of the lawsuit.

G.  Award Plaintiff pre and post judgment interest at the legal rate.

35

H.  Any and all such other relief as the Court deems appropriate under the

circumstances.

                                    **ALLEN & ASSOCIATES**
                                    _/s/ Michele D. Allen_
                                    Michele D. Allen (#4359)
                                    4250 Lancaster Pike Suite 230
                                    Wilmington, DE 19805
                                    302-234-8600
                                    302-379-3930 (fax)
                                    michele@allenlaborlaw.com
Dated: ~~August 15~~September 5, 2024          Attorney for Plaintiff

36