# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUSAN OBERLANDER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:24-cv-00951-JLH |
| | ) | |
| NEW CASTLE COUNTY, | ) | JURY TRIAL DEMANDED |
| MATTHEW MEYER, in his | ) | |
| individual capacity as New Castle | ) | |
| County Executive; | ) | |
| DR. JACQUELINE JENKINS in | ) | |
| her individual capacity as Human | ) | |
| Resources Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

ALLEN & ASSOCIATES

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
4250 Lancaster Pike, Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
*Attorney for Plaintiff*

DATE: October 3, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

STANDARD OF REVIEW ............................................................................................... 6

ARGUMENT ...................................................................................................................... 7

   I.   PLAINTIFF HAS PROPERLY PLED 42 U.S.C. § 1983 CLAIMS AGAINST
   DEFENDANT NCC. ...................................................................................................... 7

     A.   Plaintiff Has Sufficiently Pled the County's Liability for Civil Rights Violations
     under Monell. ............................................................................................................ 7

        i.   Meyer and Jenkins Are County Employment Policymakers. ............................... 10

        ii.   Plaintiff Has Adequately Alleged a Policy or Custom ........................................... 11

        iii.     Plaintiff's § 1983 Failure to Supervise Claims Are Supported by Adequate
        Factual Allegations ................................................................................................... 14

     B.   Plaintiff Will Not Oppose Defendants' Motion to Dismiss Only as it Relates to
     Counts III and IV for Violations of § 1983 Against Defendants Meyer and Jenkins in
     Their Individual Capacities. ...................................................................................... 14

   II.   COUNTS I AND III OF PLAINTIFF'S AMENDED COMPLAINT ARE
   PROPERLY PLED AND DO NOT VIOLATE RULE 8 OF THE FEDERAL RULES OF
   CIVIL PROCEDURE. ................................................................................................ 14

   III.    PLAINTIFF HAS PROPERLY PLED A RETALIATION CLAIM UNDER
   TITLE VII AND THE DDEA IN COUNT II OF HER AMENDED COMPLAINT. ...... 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Alred v. Eli Lilly & Co.*,
    771 F. Supp. 2d 356 (D. Del. 2011). ..................................................................... 16

*Aman* v. Cort Furniture Rental Corp.,
    85 F.3d 1074 (3d. Cir. 1996)........................................................................... 18

*Andrews v. City of Philadelphia*,
    895 F.2d 1469 (3d Cir. 1990).......................................................................... 8, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009). ...................................................................................... 6, 15

*Banner v. Dep't of Health & Soc. Servs. Div. for the Visually Impaired*,
    2015 WL 4592436 (D. Del. July 30, 2015)................................................... 6

*Beck v. City of Pittsburgh*,
    89 F.3d 966 (3d Cir. 1996).............................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007). ....................................................................................... 6, 7

*Bhatnagar v. Meyer*,
    2021 WL 7209368 (D. Del. Dec. 20, 2021)................................................. 10

*Bielevicz v. Dubinon*,
    915 F.2d 845 (3d Cir. 1990)............................................................................. 8

*Boyer v. City of Philadelphia*,
    2015 WL 9260007 (E.D. Pa. De. 15, 2015)................................................. 17

*Brown v. Nicklow*,
    2023 WL 1766272 (M.D. Pa. Feb 3, 2023)................................................. 15

*Chambers v. York Cnty. Prison*,
    2021 WL 1212532 (M.D. Pa. Mar. 31, 2021)............................................... 12, 13

*City of Canton, Ohio v. Harris*,

489 U.S. 378 (1989). ....................................................................................................... 9

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016) ...................................................................................... 20

*Davis v. Passman*,
442 U.S. 228 (1979). ...................................................................................................... 7

*Dixon v. Amerihealth Administrators*,
2017 WL 3189136 (E.D. Pa. July 27, 2017) ............................................................ 20

*Farrell v. Planters Lifesavers Co.*,
206 F.3d 271 (3d Cir. 2000) ...................................................................................... 17

*Fike v. Global Pharma Healthcare Private, Ltd.*,
2024 WL 3460114  (E.D. Pa. July 18, 2024) ............................................................ 15

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) ........................................................................................ 15

*Glass v. Philadelphia Elec. Co.,*
34 F.3d 188 (3d Cir. 1994) ........................................................................................ 18

*Hargrave v. Cty. of Atl.*,
262 F.Supp.2d 393 (D.N.J. 2003) ............................................................................... 8

*Holley v. Port Auth. Of N.Y. & N.J.*,
2018 WL 4953008 (D.N.J. Oct. 12, 2018) ................................................................. 7

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ...................................................................................... 6

*Losch v. Borough of Parkesburg*,
736 F.2d 903 (3d Cir. 1984) ...................................................................................... 11

*Maio v. Aetna, Inc.,*
221 F.3d 472 (3d Cir. 2000). ....................................................................................... 6

*Monell v. Dept. of Soc. Servs. of New York*,
436 U.S. 658 (1978) ........................................................................................... *passim*

iii

*Natale v. Camden Cty. Corr. Facility*,
　　318 F.3d 575 (3d Cir. 2003) ........................................................... 12, 13

*Pinnavaia v. Celotex Asbestos Settlement Tr.*,
　　271 F. Supp. 3d 705 (D. Del. 2017) ....................................................... 6

*Qin v. Vertex, Inc.*,
　　100 F.4th 458 (3d Cir. 2024) ............................................................... 19

*Runion v. Equip. Trans., LLC*,
　　2017 WL 3839917 (M.D. Pa. Sept. 1, 2017) .......................................... 17

*Santora v. Red Clay Consol. Sch. Dist.*,
　　580 F. App'x 59 (3d Cir. 2014) ............................................................. 12

*Schaedler v. Reading Eagle Publ'n, Inc.*,
　　370 F.2d 795 (3d Cir. 1967) ................................................................. 15

*Spady v. Wesley Coll.*,
　　2010 WL 3907357 (D. Del. Sept. 29, 2010) ........................................... 16

*Spruill v. Gillis*,
　　372 F.3d 218 (3d Cir. 2004) ................................................................... 6

*Theriault v. Dollar General*,
　　366 Fed. App'x 172 (3d Cir. 2009) ....................................................... 17

*Thomas v. Cumberland Cnty.*,
　　749 F.3d 217 (3d Cir. 2014) ................................................................. 14

*Thorn v. New Castle County*,
　　2022 WL 2828837 (D.Del. July 20, 2022) ............................................. 13

*Vaticano v. Twp. of Edison*,
　　514 Fed. App'x 218 (3d Cir. 2013) ....................................................... 17

*Witcher v. Sodexho, Inc.*,
　　247 F. App'x 328 (3d Cir. 2007) ........................................................... 16

*Woodson v. Scott Paper Co.*,
　　109 F.3d 913 (3d Cir. 1997) ................................................................. 17

*Wooten v. City of Wilmington*,
2021 WL 411707 (D. Del. Feb. 5, 2021). .................................................................. 16

*Wright v. Northampton Cmty. Coll.*,
2019 WL 13112863 (E.D. Pa. May 5, 2019) .......................................................... 20

**Statutes**

19 *Del. C.* § 710 *et seq.* ............................................................................ 15, 16, 17, 19

42 U.S.C. § 1983 ................................................................................................. *passim*

42 U.S.C. § 2000e *et seq.* ....................................................................... 15, 16, 17, 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 6

Fed. R. Civ. P. 8 ........................................................................................... 14, 15, 16

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Susan Oberlander ("Plaintiff" or "Oberlander") filed her Complaint (the "Complaint") in the United States District Court for the District of Delaware on August 15, 2024 (D.I. 1). On September 5, 2024, Plaintiff filed her Amended Complaint (D.I. 5) against New Castle County, Office of Assessment ("Defendant NCC" or "NCC"), Matthew Meyer ("Meyer"), in his individual capacity as New Castle County Executive, and Dr. Jacqueline Jenkins ("Jenkins"), in her individual capacity as Human Resources Officer. On September 19, 2024, Defendants filed their Motion to Dismiss Plaintiff's First Amended Complaint (D.I. 7) and the accompanying Opening Brief in Support of their Motion to Dismiss (D.I. 8). This is Plaintiff's Answering Brief in Opposition of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## SUMMARY OF THE ARGUMENT

1.      Counts III and IV should not be dismissed, as Plaintiff has sufficiently pled facts in support of her claims of violations of 42 U.S.C. § 1983 against Defendant NCC.

2.      Plaintiff will not oppose Defendants' motion to dismiss as it relates to Count III and IV against Matthew Meyer and Jacqueline Jenkins in their individual capacities for violations of 42 U.S.C. § 1983.

3.      Counts I and III are should not be dismissed, as Plaintiff's Amended Complaint provides sufficient facts to support plausible claims for relief and properly details her distinct claims against Defendants.

4.      Count II should not be dismissed, as Plaintiff has sufficiently pled facts establishing causation that Defendant NCC's adverse employment actions against Plaintiff in failing to promote her were in retaliation for her protected activities.

## STATEMENT OF FACTS[1]

Plaintiff began her employment with Defendant New Castle County on July 2, 2018, in the position of Technician before being promoted to Certified Assessor I on November 29, 2018, and Certified Assessor II on April 19, 2021. Am. Compl. ¶ 27. Plaintiff currently holds the position of Assessment Analyst. Am. Compl. ¶ 29. As discussed more fully below, Defendant NCC engaged in gender discrimination, fostered a hostile work environment, including cultivating an environment of accepted sexual harassment and gender discrimination, and wrongfully retaliated against Plaintiff. Defendant deprived Plaintiff of equal protection under the law by maintaining a policy, custom, and practice of intentional sex discrimination, in addition to a policy of condoning a sexually hostile work environment, refusing to properly investigate claims of sexual harassment, and failing to adequately supervise and train its employees on proper investigation and prevention of claims of sexual harassment.

In January of 2021, John Farnan was promoted to the position of Property Assessment Services Administrator and in this role, he became Plaintiff's direct supervisor. Am. Compl. ¶ 30. Thereafter, Farnan began targeting Plaintiff based on her sex, often crossing professional boundaries and making her feel uncomfortable. Am. Compl. ¶ 33. Farnan's inappropriate behavior toward Plaintiff gradually ramped up and increased in severity leading up to him sending her a barrage sexually explicit text messages on July 9, 2022. Am. Compl. ¶ 34-41. In response to Farnan's sexually explicit and otherwise inappropriate text messages, on July 11, 2022, Plaintiff informed him she would no longer communicate with him via text message. Am. Compl. ¶ 43.

---

[1] As is required at this stage of the proceeding, the Court is required to accept all factual allegations in the Complaint as true.

However, beginning in the early morning on November 8, 2022, Farnan sent approximately sixty-four (64) sexually explicit and otherwise inappropriate text messages to Plaintiff's work phone, including: "Want to screww around"; "Would you ever be John you are drunk but if you pay 500 I'd show you my boobs?"; "Wanna fuckka around?"; and "I'm an dirty guy who just loves naked people." Am. Compl. ¶ 44-45. Plaintiff experienced severe emotional distress as a result of the sexual harassment by her supervisor. Am. Compl. ¶ 42.

The following day, on November 9, 2022, Plaintiff reported John Farnan's sexual harassment to his supervisor, Denzil Hardman. Am. Compl. ¶ 46. Hardman instructed Plaintiff to work from home following her report of sexual harassment and to "coordinate" with him on when she could come into the office in order to be kept separate from John Farnan, meanwhile Farnan was allowed to continue working in the office unrestricted. Am. Compl. ¶ 47-50. On November 9, 2022, a Human Resources representative reached out to Plaintiff instructing her to submit a formal complaint, which Plaintiff promptly submitted. Am. Compl. ¶ 51.

However, due to Defendant's deliberate indifference to the rights of Plaintiff to be free from sexual harassment in the workplace, as well as its failure to adequately supervise and/or train its employees on proper investigation and prevention of claims of sexual harassment, the investigation into Plaintiff's complaint of sexual harassment was mishandled and unreasonably delayed. Am. Compl. ¶ 47-71. For instance, Defendant failed to instruct John Farnan to cease communication with Plaintiff until over a week after Plaintiff's initial complaint, resulting in Plaintiff being forced to endure further contact with her harasser. Am. Compl. ¶ 51-53. Plaintiff was re-traumatized by having to unnecessarily relive and recount her sexual harassment due to mishandling of her complaint. Am. Compl. ¶ 54. Additionally, Human Resources did not review Plaintiff's complaint with her until approximately one month after she submitted her complaint, at

which time she was informed this delay was due to several other similar incidents taking precedence over hers. Am. Compl. ¶ 60-61. Defendant's investigation into Plaintiff's complaint which eventually substantiated her allegations of sexual harassment took over four months, during which time Farnan was permitted to continue in his supervisory position and regularly come into the office. Am. Compl. ¶ 57-58, 63-64. Moreover, despite Defendant's investigative finding that Farnan's behavior toward Plaintiff was unwelcomed, unprofessional, inappropriate, and interfered with her work performance and assurance to Plaintiff that appropriate action would be taken against her harasser, Farnan was allowed to continue his employment at New Castle County and was merely demoted to the same position as Plaintiff, allowing him to continue working in close proximity to her. Am. Compl. ¶ 64-70.

By and through the above-stated actions and actions within Plaintiff's Amended Complaint, Defendant clearly maintained a policy, custom and practice of condoning and promoting a sexually hostile work environment through its failure to adequately supervise and train its employees on adequate investigation and prevention of claims of sexual harassment. Upon actual notice of Plaintiff's sexual harassment, Defendant NCC had a duty to promptly and properly investigate her claims and prevent any further sexual harassment. However, due to Defendant's failure to establish appropriate policies and procedures and appropriately train and supervise its employees, they failed to take appropriate remedial action and thereby consciously acquiesced to Farnan's conduct. As such, Defendant intentionally failed to take measures reasonably calculated to end or mitigate harassment of female employees, including Plaintiff. Defendant's failure to adequately discipline a verified harasser, protect female employees, and eliminate or curtail sexual harassment against them has been so widespread as to constitute the de facto equivalent of a formal policy of sex discrimination.

Moreover, Plaintiff filed a Charge of Discrimination (Charge No.: OBE050523/17C-2023-00321) with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, gender discrimination, hostile work environment and retaliation against Defendant on May 4, 2023. Am. Compl. ¶ 16. Following Plaintiff's complaint of sexual harassment and filing of a Charge of Discrimination, she applied for promotion to the open Property Assessment Services Administrator position on July 10, 2024. Am. Compl. ¶ 16, 80. Plaintiff interviewed for this position; however, on September 18, 2023, the position was ultimately given to a different candidate who was less qualified than Plaintiff and had not engaged in protected activity. Am. Compl. ¶ 81-85, 150. Interestingly, one of the three interviewers and decisionmakers in the Property Assessment Services Administrator promotional process was Denzil Hardman, who was aware of Plaintiff's complaint of sexual harassment and the investigation into such complaint. Am. Compl. ¶ 81, 141-142.

As a result, on October 23, 2023, Plaintiff filed another Charge of Discrimination (Charge No.: OBE102323/17C-2024-00189) with the DDOL and EEOC alleging gender discrimination and retaliation against Defendant NCC relating to its failure to promote Plaintiff to the Property Assessment Services Administrator (Assessor Supervisor) position. Am. Compl. ¶ 19. Thereafter, Plaintiff applied for promotion to the open Assessment Analyst position. Am. Compl. ¶ 89. Plaintiff interviewed for this position; however, on November 9, 2023, the position was ultimately given to a different candidate who was less qualified than Plaintiff and had not engaged in protected activity. Am. Compl. ¶ 91-94, 151. Again, in this promotional process Denzil Hardman was one of the three interviewers and decisionmakers. Am. Compl. ¶ 90, 146-147.

Plaintiff filed her third Charge of Discrimination (Charge No.: OBE112023/17C-2024-00160) with the DDOL and EEOC for gender discrimination and retaliation against Defendant

NCC for failure to promote her to the Assessment Analyst position on November 20, 2023. Am. Compl. ¶ 22. Plaintiff has suffered and continues to suffer from severe emotional distress, low self-esteem and self-confidence, humiliation, anxiety, and irreparable damage to her career due to the continuing discriminatory and wrongful conduct by Defendants. Am. Compl. ¶ 101.

## STANDARD OF REVIEW

When a Court is evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all material allegations of the complaint. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004). Accordingly, a Court may only grant such a motion to dismiss after it concludes Plaintiff is not entitled to relief and has "accept[ed] all well-pleaded allegations in the complaint as true and view[ed] them in the light most favorable to plaintiff." *Maio v. Aetna, Inc.,* 221 F.3d 472, 481-82 (3d Cir. 2000). There is no heightened pleading requirement ". . . a complaint attacked by a 12(b)(6) motion does not need detailed factual allegations," but only sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banner v. Dep't of Health & Soc. Servs. Div. for the Visually Impaired,* 2015 WL 4592436, at *2 (D. Del. July 30, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

On a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). In order to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to

raise a reasonable expectation that discovery will reveal evidence of the necessary element."

*Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. PLAINTIFF HAS PROPERLY PLED 42 U.S.C. § 1983 CLAIMS AGAINST DEFENDANT NCC.

Plaintiff has properly pled her § 1983 claims against Defendant New Castle County in Count III of her Amended Complaint pertaining to Defendant's violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by creating and fostering a hostile, intimidating, and offensive working environment which had the effect of substantially interfering with Plaintiff's work performance amounting to unlawful sex discrimination. Further, Plaintiff has also adequately pled a § 1983 claim against Defendant NCC in Count IV of her Amended Complaint related to its failure to properly train and supervise its employees on adequate investigations and prevention of sexual harassment claims.

#### A. Plaintiff Has Sufficiently Pled the County's Liability for Civil Rights Violations under *Monell*.

Plaintiff's § 1983 claims require proof: "(1) [of a] violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law." *Holley v. Port Auth. Of N.Y. & N.J.*, No. 14-7534, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (internal citations omitted). Individuals have a clear right, protected by the equal protection clause of the Fourteenth Amendment, to be free from discrimination in public employment. *See Davis v. Passman*, 442 U.S. 228, 234-35 (1979).

In their Opening Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint Defendants argue Plaintiff has failed to plead sufficient allegations to demonstrate the County had a custom of sexual harassment which caused her to suffer a constitutional tort. (D.I. 8). However, the County is liable under *Monell* because there is a well-settled custom of sexual harassment in the County.

Moreover, "when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658 (1978)). Therefore, Plaintiff can reasonably establish liability of the County under *Monell* with assertions that the sexual harassment and the County's response thereto which she pled reflects a "practice" or "course of conduct" among County officials which is "so permanent and well settled as to virtually constitute law." *Hargrave v. Cty. of Atl.*, 262 F.Supp.2d 393, 443 (D.N.J. 2003) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Additionally, Plaintiff has sufficiently pled in the Amended Complaint that certain policymakers, such as Meyer and Jenkins, are responsible for the established custom of condoning sexual harassment within the County by acquiescence. *Andrews*, 895 F.2d at 1480. A custom which is "so permanent and well settled as to have the force of law [is] ascribable to municipal decisionmakers." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Here, the relevant policymaker for the County is clearly Jenkins.

Plaintiff has sufficiently pled at this stage of the proceeding that there was a well-settled custom of sexual harassment within the County. Plaintiff has plead that there were other employees

subject to the same sexual harassment by Farnan, that Farnan's conduct was well known by others, including supervisors, but the County did little or nothing to stop such conduct.

Furthermore, Plaintiff asserts the County's failure to train and discipline its employees caused Plaintiff's injuries and that such conduct reflects a deliberate indifference to her constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). Justice O'Connor, concurring in *City of Canton*, suggested a plaintiff might show "deliberate indifference" in two ways; explaining that a plaintiff may show this by pleading "that policymakers were aware of, and acquiesced in, a pattern of constitutional violations..." *Id.* at 397. Here, Plaintiff has pled that Defendant received other complaints of sexual harassment by Farnan. As a result, Plaintiff has pled that Defendant ignored or downplayed reports of sexual harassment and further suppressed specific complaints of harassment against Farnan.

Here, Plaintiff has further alleged that Jenkins, as the Director of Human Resources, acting on behalf of the County, failed to direct and train employees how to appropriately respond to sexual harassment allegations. Defendant NCC was aware of the need to protect employees from sexual harassment at the hands of supervisors and co-workers. Despite this knowledge of the need to act to prevent employees from being subjected to sexual harassment, Defendant's lack of action establishes a custom of inaction in failing to adequately protect its employees. Defendant's failure to implement more rigorous training and oversight amounts to deliberate indifference that caused Plaintiffs' constitutional injuries. Accordingly, Plaintiff has sufficiently plead a policy or custom to establish Defendant's *Monell* liability.

Finally, Plaintiff has pled that the County's response to her report of sexual harassment was so ineffectual that it communicated to both Farnan and his NCC co-workers that such behavior

was acceptable. This mishandling by the County had the dual effect of emboldening Farnan and chilling complaints from other victims of sexual harassment.

      i.   <u>Meyer and Jenkins Are County Employment Policymakers.</u>

Matthew Meyer, the County Executive for New Castle County, and Jacqueline Jenkins, the Chief Human Resources Officer, have final authority as to practices and policies related to sexual harassment in the workplace and the supervision and training of their employees in the investigation and prevention of sexual harassment in employment at New Castle County. Meyer and Jenkins, in their roles, were not only aware of the discriminatory actions taken against Plaintiff but effectively condoned such practices by their failure to institute proper procedures and policies of zero tolerance of sexual harassment.

Defendants claim that Meyer and Jenkins are not final policy makers with respect to policies of sexual harassment in the workplace and processes of investigation and training related to sexual harassment; however, this is untrue. Meyer and Jenkins are final policy makers as it relates to policies and practices pertaining to sexual harassment in the workplace as well as policies and practices relating to the supervision and training of New Castle County employees in the investigation and prevention of sexual harassment in the workplace. *See Gelpi v. City of Philadelphia*, 183 F. Supp. 3d 684, 689 (E.D. Pa. 2016) (A policymaker is an official with "final, unreviewable discretion to make a decision or take an action.").

Moreover, Defendant improperly asserts that this Court has previously decided this issue in its ruling in *Bhatnagar v. Meyer*, 2021 WL 7209368 (D. Del. Dec. 20, 2021). However, Defendant is incorrect, as that does not properly apply here. The ruling in *Bhatnagar* is related to a specific issue pertaining to the termination of a county attorney and disaffirms Meyer's role as a policy maker in that specific action. Here, Plaintiff argues that Meyer and Jenkins are policy

makers as it relates to the overall sexual harassment policies and their implementation. Further, Plaintiff asserts that Meyer and Jenkins are policy makers as it relates to the County's polices on training and supervision.

In this instance, the Meyer and Defendant Jenkins are the final policy makers as there is no discretion in their decision-making authority related their implementation and administration of policies and practices pertaining to sexual harassment in employment at New Castle County. Thus, the decisions made by Meyer and Jenkins pertaining to such policies and practices results in an unreviewable discretion. In Count III of the Amended Complaint, Plaintiff has pled evidence to support that she was subjected to sexual harassment and a hostile and offensive work environment. In Count IV of the Amended Complaint, Plaintiff has pled evidence to support the inadequacy of the investigation into her complaint of sexual harassment as well as Defendant's failure to properly train and supervise its employees on investigation and prevention of sexual harassment. This evidence, in turn, supports that the policymakers did not engage in reasonable, corrective efforts to address a systemic problem of sexual harassment in the workplace at New Castle County and has caused Plaintiff to be harmed by the custom and policy Defendant created.

     ii.   <u>Plaintiff Has Adequately Alleged a Policy or Custom.</u>

Plaintiff states valid *Monell* claims against Defendant New Castle County in Counts III and IV in her Amended Complaint. Municipal liability under this doctrine is governed by *Monell*, 436 U.S. 658. To establish liability under *Monell*, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and establish "a causal link" between the policy or custom and the constitutional injury alleged. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Here, in Count III of her Amended Complaint, Plaintiff clearly identifies the challenged policy or pattern of practice of creating and condoning a sexually hostile, intimidating,

and offensive work environment. Am. Compl. ¶ 162-166. Moreover, in Count IV of her Amended Complaint, Plaintiff clearly identifies Defendant's challenged policy or pattern of practice of failing to establish appropriate policies and procedures and appropriately train and supervise its employees on the investigation and prevention of sexual harassment in the workplace. Am. Compl. ¶ 185-190.

Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. *Santora v. Red Clay Consol. Sch. Dist.*, 580 F. App'x 59, 62 (3d Cir. 2014). A plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. *Andrews*, 895 F.2d at 1480. There are three ways a § 1983 plaintiff can show they suffered discrimination attributable to a custom or policy. In this instance, Plaintiff has pled "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the [plaintiff's] need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). If the unconstitutional practice is sufficiently "pervasive," it can be "attributed to the municipality, without identifying a particular policymaker responsible for acquiescing in the practice." *Chambers v. York Cnty. Prison*, 2021 WL 1212532, at *5 (M.D. Pa. Mar. 31, 2021).

Here, Plaintiff has pled facts to show Defendant New Castle County had a custom or policy of discriminatory practices of allowing and condoning sexual harassment which has detrimentally affected Plaintiff on the basis of her sex. Counts III and IV of the Amended Complaint set forth numerous complaints of violations of Plaintiff's equal protection rights and Defendant's failure to

take corrective action. Meyer, the County Executive for New Castle County, and Jenkins, the Chief Human Resources Officer, were not only aware of the sexual harassment of Plaintiff and discriminatory actions taken against her but also failed to remove Plaintiff's harasser from the workplace, forcing her continued exposure to a sexually hostile work environment, and were further aware of issues of sexual harassment permeating the workplace within New Castle County. Am. Compl. ¶ 55-59. There was a clear need for Meyer and Jenkins to act affirmatively and take corrective actions against the established practice of sexual harassment in order to act in accordance with Plaintiff's constitutional rights. Accordingly, the inadequacy of any existing policy to deter this practice resulted in the violation of Plaintiff's constitutional rights. Therefore, it can only be reasonably concluded the Defendant was deliberately indifferent to Plaintiff's needs. *Natale*, 318 F.3d 575 at 584.

Moreover, although Plaintiff has properly alleged a custom or policy under *Monell* as stated above, "to survive a motion to dismiss, a plaintiff is not required to identify the specific custom and its inadequacy." *Thorn v. New Castle County*, 2022 WL 2828837, at *3 (D.Del. July 20, 2022). At this stage, Plaintiff's complaint needs only contain facts supporting "a plausible inference that there is a policy or custom that caused plaintiff's injury and a plausible inference that the municipality was the deliberate, moving force behind it." *Id*.

Assuming *arguendo*, and it is determined Meyer and Jenkins are not final policy makers, the unconstitutional practices of New Castle County are sufficiently "pervasive," enough to attribute liability to the County "without identifying a particular policymaker responsible for acquiescing in the practice." *Chambers*, 2021 WL 1212532, at *5. As such, Plaintiff has stated a valid *Monell* claim against Defendant and therefore, Defendants' motion should be denied.

iii. <u>Plaintiff's § 1983 Failure to Supervise Claims Are Supported by Adequate Factual Allegations.</u>

Count IV of the Amended Complaint states sufficient facts related to Defendant's failure to train and supervise its employees in proper investigation and prevention of sexual harassment to proceed at this stage of litigation. Defendant had sufficient knowledge of the sexual harassment of Plaintiff as well as the environment of sexual harassment permeating the New Castle County workplace to amount to a clear deliberate indifference of Plaintiff's rights. As such, Plaintiff has properly alleged facts demonstrating a "pattern of similar constitutional violations by untrained employees" so as to put Defendant on notice of the deficiencies in its established policies and practices which they were aware failed to adequately investigate and prevent Plaintiff's sexual harassment by her supervisor. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014). Moreover, Defendant NCC, as well as Meyer and Jenkins, in their roles as policymakers within New Castle County government, violated Plaintiff's constitutional rights by subjecting her to a further sexually hostile work environment by failing to take proper corrective action pertaining to its policies and practices relating to training and supervision. Therefore, it can only be reasonably concluded the Defendant was deliberately indifferent to Plaintiff's needs. Defendant implicitly supported sexual harassment and discriminatory actions against Plaintiff by its deliberate indifference and as such Plaintiff's claim for relief under § 1983 should not be dismissed.

**B. Plaintiff Will Not Oppose Defendants' Motion to Dismiss Only as it Relates to Counts III and IV for Violations of § 1983 Against Defendants Meyer and Jenkins in Their Individual Capacities.**

## II. COUNTS I AND III OF PLAINTIFF'S AMENDED COMPLAINT ARE PROPERLY PLED AND DO NOT VIOLATE RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiff has properly pled a claim of sex discrimination by virtue of being sexually harassed by her supervisor which resulted in a hostile work environment against the County in

Count I of the Amended Complaint. Defendant's actions violate both under Title VII and the DDEA. Additionally, Plaintiff has adequately pled a § 1983 claim against Defendant in Count III of her Amended Complaint relating to Defendant's violation of Plaintiff's rights by creating and fostering a sexually hostile working environment.

Pursuant to the general pleading requirements under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The claim must have "facial plausibility" meaning the "plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts have liberally construed the pleading standard in Rule 8, recognizing that "the decision to dismiss a complaint show not be entered lightly because it 'forecloses inquiry into the merits.'" *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019) (quoting *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)). "Ordinarily, a complaint should only be dismissed as a shotgun pleading if it is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Fike v. Global Pharma Healthcare Private, Ltd.*, 2024 WL 3460114, at *2 (E.D. Pa. July 18, 2024) (quoting *Brown v. Nicklow*, No. 1:22-CV-293, 2023 WL 1766272, at *3 (M.D. Pa. Feb 3, 2023)).

Here, Plaintiff's Amended Complaint provides a short and plain statement of her claims, with sufficient facts to support a plausible claim for relief. In accordance with the Rule 8 pleading standard, the Amended Complaint clearly separates Plaintiff's claims into distinct counts against specific defendants. Moreover, Plaintiff's Amended Complaint clearly identifies discrete defendants and specific actions taken by these defendants in relation to Plaintiff's claims.

As the Court may glean from a plain reading of the Amended Complaint, the Amended Complaint clearly outlines Plaintiff's claims with requisite factual support and specifies which claims apply to which defendants. Both Count I and Count III of Plaintiff's Amended Complaint incorporate the proceeding facts while connecting the facts to the clearly specified claims for relief. For instance, although the facts pertaining to John Farnan's sexual harassment of Plaintiff are fully explained in the Facts section of the Amended Complaint, Count I further attributes such facts to the specific cause of action pled within. Am. Compl. ¶ 33-45, 111-112. Furthermore, facts related to the inadequacy of the investigation into Plaintiff's complaint of sexual harassment are detailed in the Facts section of the Amended Complaint; however, these facts are then properly connected to the relevant claim for relief and each discrete defendant in Count III. Am. Compl. ¶ 46-69, 164, 166, 177. Therefore, Plaintiff's Amended Complaint clearly adequately complies with the general pleading requirements of Federal Rule of Civil Procedure Rule 8.

Moreover, Count I of Plaintiff's Amended Complaint properly states a claim for sex discrimination under Title VII and the DDEA. Delaware law does not prohibit the simultaneous pursuit of state and federal employment discrimination claims when they are brought in the same action in federal court. *See Wooten v. City of Wilmington*, C.A. No. 19-2133-RGA, 2021 WL 411707, at *7 (D. Del. Feb. 5, 2021). Moreover, neither the statutory text nor the legislative history of the DDEA suggest that a plaintiff is barred from simultaneously pursuing DDEA and federal statutory claims in a single federal court action. *See Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 368 (D. Del. 2011). "[Courts] evaluate DDEA claims under the same framework used to evaluate Title VII claims." *Spady v. Wesley Coll.,* 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010) (citing *Witcher v. Sodexho, Inc.,* 247 F. App'x 328, 329 n. 1 (3d Cir. 2007)).

**III.  PLAINTIFF HAS PROPERLY PLED A RETALIATION CLAIM UNDER TITLE VII AND THE DDEA IN COUNT II OF HER AMENDED COMPLAINT.**

Plaintiff has established all requisite elements to properly plead a claim against Defendant NCC for retaliation under both Title VII and the DDEA in her Amended Complaint.

A claim for retaliation in violation of Title VII requires (1) Plaintiff's engagement in an activity protected by Title VII; (2) adverse action taken by the employer against Plaintiff; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Runion v. Equip. Trans., LLC*, No. 15-2159, 2017 WL 3839917, at *3 (M.D. Pa. Sept. 1, 2017) (citing *Theriault v. Dollar General*, 366 Fed. App'x 172, 174 (3d Cir. 2009)). In their Opening Brief, Defendants have not argued that Plaintiff has failed to establish that she engaged in protected activity and that she suffered adverse employment actions by her employer. Plaintiff has pled facts sufficient to establish the requisite causal connection between her protected activities and Defendant NCC's adverse employment actions.

In order to show causation sufficient to establish the third element in support a Title VII retaliation claim, Plaintiff must plead facts showing an unusually suggestive temporal proximity between the protected activity and the retaliatory adverse employment action or facts showing a pattern of antagonism. *Boyer v. City of Philadelphia*, 2015 WL 9260007, at *3 (E.D. Pa. De. 15, 2015). Additionally, a plaintiff can establish a link between her protected activity and subsequent adverse employment action "if the employer engaged in a pattern of antagonism in the intervening period." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-921 (3d Cir. 1997). Furthermore, evidence of causation may be "gleaned from the record as a whole." *Vaticano v. Twp. of Edison*, 514 Fed. App'x 218, 225 (3d Cir. 2013) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Plaintiff's Amended Complaint asserts facts which support the inference that Defendant NCC engaged in retaliatory actions against Plaintiff after she filed complaints with the Delaware Department of Labor. In regard to Defendant NCC's failure to promote Plaintiff to the Property Assessment Services Administrator position, Plaintiff asserts that Defendant NCC took the aforementioned adverse employment action against Plaintiff within weeks after she filed her Charge of Discrimination and Defendant became aware of her Charge so as to support the inference of unusually suggestive temporal proximity. Am. Compl. ¶ 137, 139-143. Defendant's timeline in reference to Plaintiff's retaliation claim is misleading as it attempts to extend the length of time between the protected activity and adverse employment action. The relevant time period for temporal proximity would be when Defendant was notified of Plaintiff's charge of discrimination which was well after the filing of the Charge. In regard to Defendant NCC's failure to promote Plaintiff to the Assessment Analyst position, Plaintiff asserts that Defendant NCC took the aforementioned adverse employment action against Plaintiff within weeks after she filed her Charge of Discrimination so as to support the inference of unusually suggestive temporal proximity. Am. Compl. ¶ 144, 148.

Moreover, Third Circuit decisions which have held that "an atmosphere of condoned [racial] harassment in a workplace increases the likelihood of retaliation for complaints in individual cases." *Glass v. Philadelphia Elec. Co.,* 34 F.3d 188, 195 (3d Cir. 1994); *Aman* v. Cort Furniture Rental Corp., 85 F.3d 1074, 1086 (3d. Cir. 1996). In other words, evidence of condoned harassment can support an inference by the factfinder that the employer, having failed to respond to the harassment, also engaged in retaliatory conduct against the plaintiff.

In this case, Plaintiff has sufficiently pled examples of a pattern of antagonism to establish causation, including the fact that Defendant condoned the harassment by failing to terminate or

even suspend Farnan and failing to adequately and promptly investigate her complaint. By way of example, Plaintiff alleged that Denzil Hardman, to whom she initially reported the sexual harassment by John Farnan and who assisted in the process of Plaintiff's report of sexual harassment and subsequently managed her working arrangements and interactions with John Farnan, was on the interview panel for both positions and had decision-making power in the hiring processes. Am. Compl. ¶ 136, 141-142, 146-147. As further evidence of causation, Plaintiff has alleged that she was more qualified for both positions than the selected candidates who had not previously engaged in protected activity. Am. Compl. ¶ 149-152, 156. Other forms of antagonistic behavior by Defendant include: forcing Plaintiff to work remotely while Farnan continued to work in the office unrestricted (Am. Compl. ¶ 48, 70); failing to suspend Farnan during the investigation and allowing him to work in the office while Plaintiff was instructed to provide notice when she could come into the office to avoid Farnan (Am. Compl. ¶ 49-50); Hardman repeatedly asking Plaintiff how she would feel working in the office with Farnan in an effort to avoid the notification process (Am. Compl. ¶ 70-71); and denying Plaintiff's request to avoid contact with Farnan at a conference, resulting in her inability to attend (Am. Compl. ¶ 74-75). These facts suggest a pattern of antagonism combined with the with temporal proximity between her protected activity and adverse employment actions are sufficient to support the causal link required.

Additionally, courts may consider the temporal context of adverse actions following a plaintiff's protected activity to support causation, for instance causation can be construed when an adverse employment action occurs at the "first promotion opportunity following [plaintiff's] protected activity." *Qin v. Vertex, Inc.*, 100 F.4th 458, 478 (3d Cir. 2024) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792-93 (3d Cir. 2016)). Here, Defendant NCC wrongfully denied

Plaintiff two separate promotion opportunities which she applied for and was qualified for in favor of lesser qualified candidates at the first available opportunity following her protected activities.

Moreover, Defendants contend that Plaintiff's Amended Complaint fails to plead a causal connection between the protected activities and adverse employment actions, however at the motion to dismiss stage of litigation, factual allegations of temporal proximity of an adverse action in retaliation of a protected activity are sufficient to support an inference of causation in a retaliation claim. *Wright v. Northampton Cmty. Coll.*, 2019 WL 13112863, at *1 (E.D. Pa. May 5, 2019) (citing *Dixon v. Amerihealth Administrators*, No. CV 17-1520, 2017 WL 3189136, at *5 (E.D. Pa. July 27, 2017) (denying a motion to dismiss in an employment discrimination action where there was nine months between the protected activity and the adverse action because plaintiff had sufficiently pled allegations establishing causation at this early stage of litigation).

Based upon Plaintiff's factual allegations of temporal proximity, at this motion to dismiss stage of litigation, Plaintiff has met her burden of pleading allegations to establish causation between her protected activities of reporting sexual harassment and filing Charges of Discrimination with the DDOL and EEOC and the subsequent adverse employment actions taken against her by Defendant NCC. Am. Compl. ¶ 136-137, 143-144, 148. Therefore, Plaintiff's allegations in her Amended Complaint are clearly sufficient to support causation in her retaliation claim under Title VII and the DDEA at this stage of litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint. In the alternative, Plaintiff requests the opportunity to file a Second Amended Complaint.

**ALLEN & ASSOCIATES**

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
Phone: (302) 234-8600
Fax: (302) 397-3930
michele@allenlaborlaw.com
*Attorney for Plaintiff*

DATE: October 3, 2024