## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SUSAN OBERLANDER,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          C.A. No. 1:24-cv-00951-JLH-SRF
                                     )
NEW CASTLE COUNTY,                   )
  MATTHEW MEYER in his individual    )
capacity as New Castle County Executive, )
DR. JACQUELINE JENKINS in her        )
individual capacity as Human Resources )
Officer                              )
            Defendants.              )

### REPORT AND RECOMMENDATION

Presently before the court is Defendants' motion to dismiss Plaintiff, Susan Oberlander's ("Plaintiff") First Amended Complaint ("FAC") (D.I. 5) for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 7)[1] Plaintiff asserts claims against Defendants, New Castle County ("NCC"), Matthew Meyer ("Meyer"), in his individual capacity as New Castle County Executive and Dr. Jacqueline Jenkins ("Jenkins"), in her individual capacity as Human Resources Officer, (collectively, "Defendants") for gender discrimination, sexual harassment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Delaware Discrimination in Employment Act ("DDEA"). 19 Del. C. § 710, et. seq.  Plaintiff alleges that NCC deprived her of equal protection guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983.  For the following reasons, the court recommends Defendants' motion to dismiss be **GRANTED-IN-PART and DENIED-IN-PART.**

---

[1] The briefing submitted for this motion can be found at D.I. 8, D.I. 9, and D.I. 10.

I.    **BACKGROUND**

    A.    **Factual Background**

    Plaintiff filed this employment discrimination suit against New Castle County, Office of Assessment, Meyer, in his individual capacity as County Executive, and Jenkins, in her individual capacity as Human Resources Officer.  (D.I. 5)  Plaintiff alleges that NCC engaged in gender discrimination, fostered a hostile work environment of undeterred sexual harassment and gender discrimination, retaliated against her, engaged in a discriminatory policy, custom, and practice, refused to properly investigate claims of sexual harassment, and failed to adequately supervise and train its employees regarding claims of sexual harassment.  (*Id.*)

    Plaintiff has been an employee of New Castle County since July 2, 2018, and currently works there as an Assessment Analyst.  (D.I. 5 at ¶ 3)  On January 25, 2021, John Farnan ("Farnan") was promoted to the position of Property Assessment Services Administrator.  (*Id.* at ¶ 30)  At that time, Farnan became the supervisor of ten Certified Assessors, including Plaintiff. (*Id.*)  The lawsuit arises from two instances, in July and November of 2022, in which Farnan is alleged to have sent the Plaintiff sexually explicit and otherwise inappropriate text messages. The first instance occurred on July 9, 2022.  (*Id.* at ¶¶ 40–41)  Thereafter, on July 11, 2022, Farnan contacted Plaintiff via email and asked her to respond to his text messages.  Plaintiff responded that she would no longer communicate with him via text message.  (*Id.* at ¶ 43)

    Approximately four months later, on November 8, 2022, Farnan sent approximately sixty-four (64) sexually explicit and otherwise inappropriate text messages to Plaintiff's work phone.  (*Id.* at ¶ 44)  On November 9, 2022, Plaintiff reported Farnan's sexual harassment to his supervisor, Denzil Hardman ("Hardman"), who was the New Castle County Accounting and Fiscal Manager.  (D.I. 5 at ¶ 46)  Plaintiff subsequently filed a formal complaint as instructed by

NCC's Human Resources' representative. (*Id.* at ¶ 51)  Plaintiff contends in this lawsuit that the investigation of her complaint was mishandled and unreasonably delayed. (*Id.* at ¶ 53)  Plaintiff alleges that her employer eventually substantiated Plaintiff's complaint, but that NCC's investigation took over four months and only resulted in the demotion of Farnan. (*Id.* at ¶ 60–63)  Therefore, Farnan regularly came to work for NCC during the investigation and remained in close working proximity to the Plaintiff even after his demotion.  (*Id.* at ¶ 68–70)

As a result of the harassment, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC") on May 4, 2023 (Charge No. OBE050523/17C-2023-00321). (D.I. 5 at ¶ 156)

On June 30, 2023, Defendant NCC posted an opening for the "Property Assessment Services Administrator" position formerly occupied by Farnan. (*Id.* at ¶¶ 78–79)  Plaintiff applied for a promotion to Property Assessment Services Administrator on July 10, 2023. Plaintiff was interviewed for the position by Hardman, Laura McDermott, Rafat Kille, and an unknown individual from NCC's Finance Department. (*Id.* at ¶ 81)

Plaintiff alleges that she was not offered the position, and learned on September 18, 2023, that it was offered to a less-qualified candidate. (*Id.* at ¶ 82)  Consequently, Plaintiff filed a second Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission on October 23, 2023 (Charge No. OBE102323/17C-2024-00189), alleging, among other claims, retaliation as demonstrated by the failure to promote her. (*Id.* at ¶ 86)

On October 2, 2023, Plaintiff applied for another promotion to the position that opened for an Assessment Analyst.  On October 25, 2023, Plaintiff was interviewed for the position and Hardman was, again, on the panel of decision-makers. (D.I. 5 at ¶ 90)  On November 9, 2023,

Plaintiff learned she was not offered the position and alleges that a lesser qualified candidate was promoted. (*Id.* at ¶ 91)

Plaintiff alleges that she was denied this promotion because of her complaints of discrimination and that Hardman, who was on the hiring board for both of her interviews, was aware of her complaints of harassment, discrimination, and retaliation. (*Id.* at ¶ 96) As a result, Plaintiff filed a third Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission on November 20, 2023 (Charge No. OBE112023 / 17C-2024-00160). (*Id.* at ¶ 98)

For Charge No. OBE050523/17C-2023-00321, Plaintiff received a Right to Sue letter from the DDOL on June 25, 2024, and a Right to Sue letter from the EEOC on July 11, 2024. (*Id.* at ¶ 105) For Charge No. OBE102323/17C-2024-00189, Plaintiff received a Right to Sue letter from the DDOL on August 14, 2024, and a Right to Sue letter from the EEOC on August 26, 2024. (*Id.* at ¶ 106) For Charge No. OBE112023/17C-2024-00160, Plaintiff received a Right to Sue letter from the DDOL on May 17, 2024, and a Right to Sue letter from the EEOC on June 17, 2024. (D.I. 5 at ¶ 107)

### B.    Procedural History

Plaintiff filed this case on August 15, 2024. (D.I. 1) On August 29, 2024, Defendants filed a motion to dismiss. (D.I. 3) Plaintiff filed the FAC on September 5, 2024, mooting the motion. (D.I. 5) In the FAC, Plaintiff asserts claims against NCC for gender discrimination, sexual harassment, hostile work environment, and retaliation, in violation of Title VII, 42 U.S.C. § 1983 and the Delaware Discrimination in Employment Act, 19 Del. C. § 710 et. seq. (Counts I & II) and asserts *Monell* claims against all Defendants pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment (Counts III & IV). (D.I. 5 at ¶¶ 102–96)

4

On September 19, 2024, Defendants moved to dismiss Counts I and III for improper

"shotgun" pleading and Counts II, III, and IV for failure to state a claim for which relief may be

granted. (D.I. 7)  The motion is fully briefed and was referred to the undersigned Magistrate

Judge on April 22, 2025.  (D.I. 16)  Oral argument was held on June 26, 2025.

## II.    LEGAL STANDARD

### A.    Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim

upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  To state a claim pursuant to Rule

12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are

not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009).  In assessing the plausibility of a claim, the court must

"accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim is facially

plausible when the factual allegations allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at

555–56.

The court's determination is not whether the non-moving party "will ultimately prevail,"

but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks

omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Id.* at 231.

## III.    DISCUSSION

### A. *Monell* Claims Against All Defendants (Counts III and IV)

#### 1.  Dismissal of Claims Against Defendants Meyer and Jenkins in Their Individual Capacities

Plaintiff states that she does not oppose dismissing her Section 1983 claims in Counts III and IV against Defendants Meyer and Jenkins, in their individual capacities.  (D.I. 9 at 1, 14) Therefore, I recommend **GRANTING** the motion to dismiss these claims, with prejudice.

#### 2.  The Section 1983 Claims Against NCC Fail to Plausibly State a Claim for Relief (Counts III and IV)

Defendants move to dismiss Plaintiff's claims pursuant to 42 U.S.C. § 1983, arguing that the FAC fails to sufficiently plead the existence of a County policy or custom causing Plaintiff's alleged constitutional violation, or that Meyer or Jenkins acted as official policymakers.  (D.I. 8 at 6–12)  Furthermore, Defendants argue the FAC fails to plausibly plead a claim that the County failed to properly train and supervise its employees.  (*Id.* at 13)  Plaintiff responds that the FAC plausibly alleges that the County is liable under *Monell* based upon Meyer and Jenkins roles as policymakers.  (D.I. 9 at 10–13)  Plaintiff further argues that the County violated her rights under Section 1983 and the Equal Protection Clause by creating a hostile work environment and failing to train and supervise its employees with respect to prevention and investigations of sexual harassment claims.  (*Id.* at 14)

6

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reed*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Brown v. Centurian of Delaware, LLC*, 2023 WL 2401818, at *2 (D. Del. Mar. 8, 2023), *reargument denied*, 2023 WL 3541697 (D. Del. May 18, 2023) (citing *Monell,* 436 U.S. at 690).

"Under *Monell,* a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under Section 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez,* 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Therefore, a plaintiff asserting an unconstitutional policy claim "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). To

7

support an unconstitutional custom claim, the allegations "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 106.

### 3. Meyer and Jenkins are not County Employment Policymakers

Defendants argue that, under Delaware law, the New Castle County Council has final authority to set employment policy and is the only entity with final policy making authority. *See*, 9 Del. C. § 1101. Therefore, neither Meyer, as County Executive, or Jenkins, as County Human Resources Officer, establishes employment policies. (D.I. 8 at 8) Defendants cite to two prior cases where Judges within this District have dismissed the New Castle County Executive and the Chief Human Resources Officer, from similar lawsuits, finding that the position or job title, without more, is not sufficient to deem that official a policymaker for purposes of *Monell* liability. *Bhatnagar v. Meyer*, 2021 WL 7209368, at *5 (D. Del. Dec. 20, 2021), *aff'd*, 2023 WL 5378834 (3d Cir. Aug. 22, 2023) (finding that although the County Executive may have discretion to hire and fire employees, he was not responsible for establishing the County's employment policy); *Clemons v. New Castle Cnty.*, 2020 WL 5978343, at *7 (D. Del. Oct. 8, 2020); *Clemons v. New Castle Cnty.*, 2021 WL 1380597, at *8 (D. Del. Apr. 12, 2021) (finding that the conclusory allegation that the Chief Human Resources Officer acted as a policymaker was insufficient to withstand dismissal).

Plaintiff correctly acknowledges that in the Third Circuit, a policymaker is "a person with final, unreviewable authority to make a decision or take action." *Santora v. Red Clay Consol. Sch. Dist.*, 580 F. App'x 59, 62 (3d Cir. 2014). Nonetheless, the FAC lacks substantive factual allegations demonstrating that Meyer and/or Jenkins possessed or acted with such authority. Plaintiff's conclusory argument that Meyer and Jenkins are policymakers with respect to the County's policies on prevention of sexual harassment is unsupported by any case authorities.

8

(D.I. 9 at 10–11)  Plaintiff argues that *Bhatnagar* is distinguishable on its facts and limited to the termination of employment of an assistant county attorney.  (*Id.*)

The court does not read *Bhatnagar* so narrowly and finds it persuasive authority. *Bhatnagar* involved an employment discrimination suit brought by a former Assistant County Attorney who was terminated by the County Attorney, Davis, for breaching NCC protocol when he sought assistance on a legal matter from an outside law firm. *Bhatnagar*, 2021 WL 7209368, at *1.  In addition to his discrimination claims, Bhatnagar brought a Section 1983 claim against NCC, the County Executive, Meyer, and the County Attorney, Davis, alleging that the decisions of Meyer and Davis which resulted in his termination were policies, practices, and/or customs of NCC.  *Id.* at *4.  The court in *Bhatnagar* disagreed and found that, although Meyer and Davis had discretion to hire and fire employees pursuant to the Delaware statutes establishing their respective duties, they are not responsible for establishing the employment policy.  *Id.* at *5. Moreover, the court found that liability for Meyer's and Davis's employment decisions did not extend to NCC, even if they exercised their discretion unconstitutionally.  *Id.*

Defendants argue that NCC has an anti-discrimination policy in place, New Castle County Code § 26.01.018.A.1.  (D.I. 8 at 9)  Therefore, even if Meyers and Jenkins arguably acted contrary to official policy, their actions would not support *Monell* liability and would only support *respondeat superior* liability which is not a proper basis for *Monell* liability against NCC. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  In reaching his decision in *Bhatnagar* that the County Executive and County Attorney were not policy makers, Chief Judge Connolly cited to Supreme Court precedent in *Pembaur* which contained the following example which he believed precisely illustrated the point:

[T]he County [official] may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the [official]'s decisions respecting employment would not give rise to municipal liability .... Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the [official] discretion to hire and fire employees and the [official] exercised that discretion in an unconstitutional manner ....

*Bhatnagar*, 2021 WL 7209368, at *5 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986)).

Plaintiff makes an alternative argument that, if Meyer and Jenkins are not policymakers, knowledge may be imputed to an unspecified County policymaker if the violative conduct is "sufficiently pervasive." *Chambers v. York Cnty. Prison*, 2021 WL 1212532, at *5 (M.D. Pa. Mar. 31, 2021). This argument fares no better as it lacks any substantive factual support and consists of conclusory allegations.

Based upon the foregoing authorities, I recommend finding that Defendants Meyer and Jenkins are not NCC employment policymakers.

### 4. Failure to Allege a Policy or Custom

Defendants argue that the FAC fails to plausibly allege a policy or custom attributable to NCC that caused the Plaintiff's constitutional injury. (D.I. 8 at 11) Plaintiff responds that Count III of the FAC identifies the policy or pattern of practice "of creating and condoning a sexually hostile, intimidating and offensive work environment" and that Count IV identifies the policy or pattern of practice "of failing to establish appropriate policies and procedures and appropriately train and supervise its employees on the investigation and prevention of sexual harassment in the workplace." (D.I. 9 at 11–12)

I recommend that the Plaintiff has pled neither a policy or a custom because she never alleges "an official proclamation, policy or an edict" or custom "so well-settled and permanent . .

10

. to constitute law." *Forrest*, 930 F.3d at 105. Furthermore, the allegations of the FAC relate to Plaintiff's own circumstances rather than an established policy or custom.

To survive a motion to dismiss, the FAC must "contain facts supporting both a plausible inference that there is a policy or custom that caused plaintiff's injury and a plausible inference that the municipality was the deliberate, moving force behind it." *Thorn v. New Castle County*, 2022 WL 2828837, at *3 (D. Del. July 20, 2022). Here, the Plaintiff pleads in conclusory fashion the elements for establishing *Monell* liability without the necessary facts.

During oral argument the court asked the Plaintiff to point to the factual allegations in the FAC which best identify the discriminatory policy, custom, or practice. Plaintiff cited FAC paragraphs 2, 56, 58, 61, 73, and 139. (D.I. 5 at ¶¶ 2, 56, 58, 61, 73, and 139)[2] These paragraphs still fall short of meeting the standard because they are vague, conclusory, and relate only to the Plaintiff's own circumstances. *See Lucas v. Officer Ham*, 2021 WL 780746, at *3 (D. Del. Mar. 1, 2021) (holding that "plaintiff pled 'the 'phraseology' of an alleged policy, practice, procedure, custom and endorsement ... but [failed to plead] supporting facts"); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (holding that allegations must consist of more than a one-off instance to establish a custom); *see also Thorn v. New Castle County*, 2022 WL 2828837, at *3

---

[2] These paragraphs state that Defendants Meyer and Jenkins turned a blind eye to "blatant acts of sexual harassment." (D.I. 5 at ¶ 2) Defendant Meyer acted with deliberate indifference by failing to implement a zero-tolerance policy for sexual harassment. (*Id.* at ¶ 56) Defendants Meyer and Jenkins were aware of the text messages and other incidents involving Farnan but allowed Farnan to continue to work in the office during the pendency of the investigation. (*Id.* at ¶ 58) Plaintiff was informed that the delay in the investigation process was due to there being several other similar incidents which took precedence over Plaintiff's. (*Id.* at ¶ 61) After Plaintiff's sexual harassment claims were substantiated, Farnan was permitted to attend an overnight work conference that other female employees attended. (*Id.* at ¶ 73) The final paragraph cites to NCC becoming aware of Plaintiff's charge of discrimination in or around September of 2023, prior to their failure to promote the Plaintiff to the Property Assessment Services Administrator position. (*Id.* at ¶ 139)

(plaintiff's citation of "sporadic" incidents spanning 20 years insufficient to establish custom); *see also Bolden v. City of Wilmington*, 2019 WL 133314, at \*3 n.2 (D. Del. Jan. 8, 2019) ("The Court is aware of no authority suggesting that a plaintiff can establish the presence of a municipal custom by alleging facts solely regarding the action/inaction of municipal employees as to the plaintiff's own circumstance.").

### 5. No Plausible Claim for Failure to Train and Supervise

Liability under Section 1983 for failure to train and supervise employees ". . . requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999)). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

To show a failure to train and supervise amounts to deliberate indifference, a plaintiff must demonstrate that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F. 3d at 357 (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). A failure to train may amount to deliberate indifference "where the need for more or different training is obvious, and inadequacy [is] very likely to result in violation of constitutional rights." *Carter*, 181 F.3d at 357 (citing *Canton*, 489 U.S. at 389).

Plaintiff presents scant argument in her answering brief in opposition to dismissal of Count IV of the FAC. (D.I. 9 at 14) Plaintiff states NCC violated her constitutional rights ". . .

12

by subjecting her to a further sexually hostile work environment by failing to take proper

corrective action pertaining to its policies and practices relating to training and supervision."

(*Id.*)  These conclusory allegations lack any factual allegations demonstrating a pattern of similar

constitutional violations by untrained employees.  Plaintiff has not pleaded, nor argued the

necessary facts to establish "a history of employees mishandling" a situation in a manner that has

"frequently cause[d] deprivation of constitutional rights." *Forrest*, 930 F.3d at 118.

Even assuming, arguendo, that Plaintiff's own report of alleged sexual harassment and a

hostile work environment were mismanaged, Plaintiff has not identified a single additional case,

much less a pattern, of a discriminatory employment action with respect to any others.

Based upon the foregoing reasons, the court recommends that Defendants' motion to

dismiss Counts III and IV be **GRANTED**.

### B.  Shotgun Pleadings

Defendants argue that Counts I and III should be dismissed as "shotgun pleadings" in

violation of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  (D.I. 8 at 6)

Courts in this Circuit have characterized a shotgun pleading as one that fails to give

adequate notice.  *See Adger v. Carney*, C.A. No. 18-2048-LPS, 2020 WL 1475422, at *7 (D. Del.

Mar. 26, 2020) (quoting *Litwak v. Tomko*, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018))

("a [shotgun] pleading does not give defendants adequate notice of the claims brought against

them and the grounds upon which each claim rests."). The Third Circuit generally agrees with

the approach of the Eleventh Circuit in *Weiland* which categorized "shotgun pleadings" into four

types: (1) a complaint containing multiple counts where each count adopts the allegations of all

preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not

obviously connected to any particular cause of action; (3) a complaint that does not separat[e]

into a different count each cause of action or claim for relief; and (4) a complaint that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)) (internal citations omitted).

Turning to the FAC in this case, the court recommends that Counts I and III sufficiently put Defendants on notice of the state and federal discrimination claims which arise from the same factual background, therefore, the pleading is not an improper shotgun pleading. Accordingly, the court recommends that Defendants' motion to dismiss Counts I and III be **DENIED**.

### C. Retaliation Claim (Count II)

Defendants move to dismiss Plaintiff's retaliation claims arguing that she has failed to adequately establish a causal connection between her reports of sexual harassment and the fact that she was twice denied a promotion. (D.I. 5 at ¶ 82) Plaintiff attributes the promotion denials to Hardman's presence in both of her interviews, because he had knowledge of her prior sexual harassment complaints. (*Id.* at ¶ 96)

Plaintiff has the initial burden of proving a prima facie case of discriminatory retaliation. "[Plaintiff] must demonstrate that (1) she engaged in a Title VII protected employee activity, (2) the employer took an adverse employment action against her, and (3) there is a causal link between the engaged protected activity and the adverse employment action." *Zelinski v. Pennsylvania State Police*, 108 F. App'x 700, 705 (3d Cir. 2004) (citation omitted). Of the three elements, Defendants argue only the third, the lack of a causal link. (D.I. 8 at 18–20)

A court may consider a broad array of circumstantial evidence in determining whether a causal link exists, perhaps the most common being the temporal proximity between the protected activity and the adverse employment action. *See id.* When a plaintiff relies on temporal proximity alone, however, the timing must be "very close" and "unusually suggestive." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). If temporal proximity is lacking, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)).

At the motion to dismiss stage, the facts as alleged in the FAC are viewed in the light most favorable to the Plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016). Plaintiff's FAC supports the inference of a causal link between the protected activity and the adverse action. The County allegedly engaged in retaliatory actions against the Plaintiff after she filed charges with the Delaware Department of Labor and EEOC as follows:

- Plaintiff's first charge of discrimination was filed with the DDOL and EEOC on May 4, 2023, and Plaintiff alleges notice was received by NCC on May 11, 2023.

- Plaintiff alleges that the adverse employment action, i.e., denial of a promotion, occurred on September 18, 2023.

- Plaintiff filed a second charge of discrimination with the DDOL and EEOC on October 23, 2023. She alleges that, in retaliation, she was denied a promotion on November 9, 2023.

Defendants argue that temporal proximity alone between the alleged protected activity and adverse action is not enough to save the retaliation claim from dismissal and cite to *Clark*

*County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001), which found a gap of twenty months insufficient, and cited other cases finding gaps of three and four months insufficient. *Clark County* is not controlling authority because it was decided at the summary judgment stage, when the facts and motivations surrounding Plaintiff's adverse action were more developed through discovery. *Id.* at 274.

In their reply brief, Defendants argue that the Plaintiff has failed to demonstrate a "pattern of antagonism" by Hardman or others at the County, that began or escalated after Plaintiff formally complained to her employer and/or filed formal charges with the DDOL and EEOC. (D.I. 10 at 7–10) Such arguments are fact intensive and cannot be addressed at the motion to dismiss stage. Accordingly, the court recommends Defendants' motion to dismiss Count II be **DENIED**.

### D. Amendment of Complaint

During oral argument, on June 26, 2025, Plaintiff made an oral application file a second amended complaint in the event the court finds that any of the Counts in the FAC are insufficiently pleaded. This remark is insufficient to support a request for leave to amend the Complaint. *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006); *Perlmutter v. Russell Hobbs, Inc.*, 450 F. App'x 161, 168 (3d Cir. 2011)). Because Plaintiff did not indicate in what ways she would amend her Complaint and further did not attach a proposed amended pleading, as required in Local Rule 15.1, the court recommends that Plaintiff's request for leave to amend its Complaint be **DENIED** without prejudice as premature. D. Del. LR 15.1. Plaintiff is required to comply with Federal Rule of Civil Procedure 15 and the court's Local Rules to the extent she intends to move for leave to file a second amended complaint.

IV.   **CONCLUSION**

For the foregoing reasons, the court recommends that the Defendants' Motion for to dismiss be **GRANTED-IN-PART and DENIED-IN-PART** as follows:

- Defendants' motion to dismiss Counts I and II is **DENIED**;

- Defendants' motion to dismiss Counts III and IV is **GRANTED** and those claims are **DISMISSED without prejudice**;

- Defendants' motion to dismiss the Section 1983 claims in Counts III and IV against Matthew Meyer and Dr. Jaqueline Jenkins in their individual capacities (D.I. 9 at 1) is **GRANTED** and those claims are hereby **DISMISSED with prejudice**; and

- Plaintiff's request for leave to amend her complaint is **DENIED without prejudice**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  August 1, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE